No. 9906.

SALLIE E. BURNS VS. GEORGE W. THOMPSON.—HEIRS OF GEE, IN-
TERVENORS.

| | |
|---|---|
| 39 | 377 |
| 45 | 1367 |
| 39 | 377 |
| 48 | 1223 |
| 39 | 377 |
| 110 | 438 |
| 111 | 779 |

Lands purchased in the name of the wife, and paid partly with her paraphernal funds under the administration of the husband, and partly with funds of the community, fall into the community.

In a suit for dissolution of the community by the wife, an allegation of the wife claiming the funds thus invested, as her paraphernal funds, will debar her of the right to claim the lands in question as her paraphernal property.

She cannot be allowed to claim at the same time the price and the thing, and will be held to that part of her pleadings in which she corrects an error in previous pleadings, in which she had omitted to claim these paraphernal funds.    Property purchased

during the community, in the name of the wife. will be treated as community property until proof is made by the wife to show that it was purchased for her own account and with her paraphernal funds, of which she had retained the administration. Mere recitals in the acts to that effect amount to no presumption in her favor.

The wife has the right of demanding the administration of the paraphernal property previously confided to her husband whenever she chooses, and such a demand must not be confounded with the action for the dissolution of the community.

The husband who has the administration of the wife's paraphernal funds owes no interest thereon before the dissolution of the community, or before the wife has obtained a judgment for the restitution of her separate funds.

As a general rule husbands and wives are incapacitated from contracting with each other during marriage, save in exceptional cases enumerated in Art. 2446 Civil Code. Hence, they cannot, by contract, bind the husband to pay interest on, or create a mortgage to secure the paraphernal funds of the wife, when none are due or exist under the law. But the inscription of such an act will be considered as that of an authentic declaration of the husband touching the paraphernal funds received by him, for his wife, and effect will be given to it as notice, but not as a contract.

A dation en paiement by the husband to the wife, on the score of detailed indebtedness from him to her, cannot stand in the face of proof that the indebtedness as therein described did not exist.

APPEAL from the Eleventh District Court, parish of Natchitoches • Pierson, J.

*Jack & Dismukes*, for Plaintiff and Appellant.

*Scarborough & Carver*, for Intervenors and Appellees.

The opinion of the Court was delivered by

POCHÉ, J. Plaintiff sues her husband for a dissolution of the community, and to recover a moneyed judgment for about $20,000, in restitution of her paraphernal funds alleged to have been received by her husband and converted to his own use and benefit; the moneyed judgment to be credited with the sum of $7,635, received by the wife through a transfer of property made to her by the husband as a *dation en paiement* on the 14th of November, 1883.

As usual, in such cases, the contest is exclusively between the wife and her husband's creditors, several of whom had intervened in this case, as judgment creditors, for the purpose of resisting plaintiff's demand, which is qualified as a fraudulent scheme to screen the husband's property from the pursuit of his *bona fide* creditors, and as entirely unfounded. Intervenors charge the *dation en paiement* of November 14, 1883, to be fraudulent, and pray for a declaration of its nullity.

The district court rejected plaintiff's entire demand, without prejudice to her rights of ownership of property transferred to her through the *dation en paiement* of November 14, 1883.

Plaintiff appeals, and intervenors pray for an amendment of the judgment, with a view to a decree annulling the *dation en paiement* aforesaid.

To properly understand this complicated litigation, which is contained in a petition, two supplemental petitions by plaintiff, two petitions of intervention, an immense collection of documentary evidence, a mass of parol testimony, all contributing to fill two large transcripts, followed by a discussion in immense briefs, a review of the salient features of the very complicated pleading and of the principal facts in the record must precede a discussion of the issues and of the law of the case.

In her first petition plaintiff sets up two distinct amounts of paraphernal funds received and used by her husband, one of $5000 accruing from the succession of her mother, and the other of $8600, as the proceeds of the sale of her interest in a piece of paraphernal property sold by her; with interest thereon at 8 per cent per annum from January 1, 1866 on the first term, and on the other from November 1, 1871, subject to a credit of $7635 as hereinabove stated.

In her first supplemental petition she charges her husband with the additional sum of $1847.24, as her share in her mother's judgment against her father, which sum went into the hands of her husband as administrator of her mother's succession, and was retained by him as her husband. She then charges her husband with the receipt of various and large amounts of money aggregating $14,090, as the proceeds of sale of different tracts of land, her paraphernal property, and she prays "for further judgments for the additional amounts" which she has just disclosed.

In her second supplemental petition she adopts with certain modifications her previous pleadings, and makes the following singular avowal:

"She avers that, at the time she filed her original petition, * * she was not fully and truly advised of the exact nature and extent of her rights and claims against her husband. * * She now avers that she is prepared to state individually and definitely the nature, origin and amounts of her paraphernal funds and effects received, used and alienated by her said husband, for his own use and behoof." * *

She then substantially reiterates, but with greater precision, the averments and recitals contained in her first supplemental petition. In connection with the sum of $1847.24 accruing to her from her mother's succession, as shown by the account of administration presented by her husband, she avers as follows : "Her husband receiving

and retaining, as stated in said tableau, $1847.24 for and on account of your petitioner, which he thereafter used and appropriated, as will be hereafter more fully stated and shown."

In that petition she also sets up that she inherited in November, 1866, from the succession of one of her sisters, who had died without issue, a certain quantity of land and also the sum of $125 accruing to her from that succession as a result of a compromise between herself and her co-heirs touching that inheritance, which sum was likewise received, used and appropriated by her husband. And that petition also concludes with a prayer for additional claims as therein disclosed.

The necessity and importance of these details of pleadings will be felt further on in the course of the discussion.

Now the salient and controlling fact in the case is that the only sources from which plaintiff has derived all her paraphernal property and funds, are mainly the succession of her mother, and incidentally that of her sister, Cornelia L. Bruns.

When the mother died, in November, 1865, she had a suit pending against her husband for a moneyed judgment of some $14,000. After her death, the suit was prosecuted to judgment by Thompson, the defendant herein, who had become the administrator of her succession, and in execution thereof, lands of the husband in the parishes of Bossier and Natchitoches were seized and sold, four of the five heirs of the deceased Mrs. W. M. Burns, including plaintiff, becoming the adjudicatees.

The proceeds of these two sales added to the unpaid balance of the judgment which was divided in kind between the heirs, and subsequently bought by one of them, made up all the assets of the deceased and amounted together to $12,643.96.

From the account of administration filed in August, 1867, it appears that, after deducting debts and law charges, the share accruing to each of the five heirs was $1,849.24, and that plaintiff's share was received by her husband.

That succession owned no lands; hence it follows that the lands acquired by the heirs of Mrs. W. M. Burns, at the two sheriff's sales in the parishes of Bossier and Natchitoches, did not become their property as their heritable shares in said lands, but simply as any other purchasers at a forced sale.

It is nowhere alleged in either of the three petitions that plaintiff used her paraphernal funds inherited from her mother's succession as above set forth, for the payment *protanto* of the lands which were adjudicated to her at the sheriff's sales; while the reverse may be rea-

sonably inferred from her silence on the subject, coupled with her husband's official declaration as administrator, that he had received and retained the funds accruing to his wife.

According to the theory of plaintiff's case, as developed by her counsel on appeal, her purchase of one-fourth of the lands was for her separate benefit, as an investment of her paraphernal funds accruing to her under the execution of her mother's judgment as above recited.

Hence they claim the proceeds of the sales of those lands subsequently made, and amounting together to upward of $2,000 as her paraphernal funds received at each sale, and afterwards used by her husband.

That contention presents the pivotal question in the case.

The proposition advanced by intervenors is to the effect that the adjudication, although in the name of the wife, vested the title to the lands in the community of acquets and gains existing between the spouses. They invoke the familiar rule enunciated in Article 2402 of the Civil Code, and solidly crystalized in our jurisprudence: that the community consists of the estates which the spouses "may acquire during the marriage or by purchase, or in any other similar way, even although the purchase be in the name of one of the two, and not of both, because, in that case, the period of time when the purchase is made is alone attended to, and not the person who made the purchase."

They concede the easily discerned exceptions to the general rule, recognized in jurisprudence, in favor of purchases by the wife in her own name and right, when made with her paraphernal funds of which she had retained the administration. But they argue that the burden of proof is on the wife to rebut or destroy the legal presumption existing in favor of the community, and to show, affirmatively, the existence of all the features and elements required by law to shield her claim from the application of the general rule.

And they finally urge that the record in this case contains no proof to justify plaintiff's claim that the adjudications of February 3, 1866, by the two sheriffs, characterized her purchase as one for the benefit of her separate account.

Our study of the case has led us to the same conclusion. Pearson vs. Pearson, 15 Ann. 119.

Every feature of the transaction, save the fact that the adjudication was made in the name of the wife, and the additional circumstance that she was entitled to one-fifth of the proceeds of the sale, strongly characterizes the purchase as one made for the account and benefit of the community.

While only one-fifth of the proceeds accrued to her, the adjudication to her was for one fourth of the lands; and her interest in the excess of the judgment over the proceeds realized by the execution was not sufficient to meet her share of the contribution to pay out the heir who did not join in the sale, to satisfy a concurrent judgment in the sum of $1040 and taxes and law-charges. Hence, the debits against her on account of the adjudication exceeded her heritable share by $696 26. And the sheriffs' returns show that the full amounts of the two adjudications were paid in cash. In his account the administrator (the defendant herein) charges himself with the proceeds of the two adjudications, and he credits himself with the share accruing to his wife, as retained by him for her account.

But the real intent of the wife as to the true character of the transaction is best illustrated by her pleadings in this very suit. We must remember here that it appears nowhere in the record, and it is not even pretended by Mrs. Thompson that she ever inherited any money or property from any source beyond her share in her mother's succession, including the inheritance from her sister, and that all her alleged acquisitions and subsequent gains must be traced to that only source. Now, in all three of her petitions, she charges her husband with "$5000 or more collected and received by him from the succession of her deceased mother, Charlotte McDaniel, wife of Wm. M. Burns, on or about the first day of January, 1866;" and judgment for that specific sum is prayed for in each of the three petitions.

But it appears that in subsequent researches, plaintiff and her counsel were confronted with the account of administration of her mother's succession, and herein above referred to; hence, reference is made to her share as disclosed by that account in the two supplemental petitions, and in each the item of $1847 24 is added to the list of her husband's indebtedness to her, and in each, prayer is made for the increase of the judgment *pro tanto*.

We note the argument of her counsel that the allegation in which that sum is claimed as her paraphernal funds received by her husband, was made through error of fact, and that therefore plaintiff should not be subjected to its destructive effect. C. C. 2291.

But the very reverse is the precise state of the case. The manifest error in her pleadings was the loose charge of $5000 alleged to have been collected from the mother's succession by the defendant Thompson, and the very apparent object of the two supplemental petitions was to rectify that error, and to include in the pleadings a statement of the true condition of that succession as shown by authentic records

which would otherwise have been brought to light with damaging effect by the dreaded judgment creditors of the husband. It was that very necessity which forced from plaintiff the significant avowal of error to which we referred, and which we transcribed, in the early part of this opinion. Can she now be heard to say through her counsel, on appeal and not before, and as an argument, that her strained effort in a supplemental petition to correct an error was itself an error of fact? If such a rule could prevail, it would be next to impossible to hold any party to his pleadings, and the formality of pleadings could then be obviated and in its wake would follow, in mournful procession, all the rules of practice hitherto indispensable to a proper administration of justice.

A similar declaration is made in the act of transfer as a *dation en paiement* in November, 1883, and also in the sworn declaration of the husband for registry in the mortgage office, under date of November 9, 1885.

All these documents were offered in evidence by plaintiff herself, and together with her pleadings they contribute to make up a record from which there is no escape for her.

It is worthy of note that during the whole trial she never made the slightest effort or attempt to prove up the allegation that her husband had received " $5000 or more " for her from the succession of her mother on the 1st of January, 1866, or at any other time, or that she had received any other funds from the succession of her mother, at any time, over and above her heritable share of $1847 24, as shown by her husband's account of administration, presented in August, 1867.

The uncontradicted proof admits, therefore, of no other conclusion but that the purchase of the lands adjudicated to plaintiff on the 3d of February, 1866, enured to the benefit of the community, and that all the profits subsequently realized from the various sales made by the spouses of the lands thus acquired, and from the reinvestment of the proceeds of such sales, as well as the profits realized from such reinvestments, as shown in the record, likewise fell into the community. Hence they are not elements of indebtedness on the part of the husband to the wife. Marshall vs. Mullen, 3 Rob. 828; Fisher vs. Gordy, 2 Ann. 762; Pearson vs. Pearson, 15 Ann. 119; Shaw vs. Hill, 20 Ann. 531; Pinard vs. Holton, 30 Ann. 169; Sentmanat vs. Soulé, 33 Ann. 612; Bachino vs. Coste, 35 Ann. 570. The theory of the case, which has been impressed upon our minds as flowing naturally from this established proposition, is that the husband as head and master of the

community, became the true and legal owner of the one-fourth of the lands sold under execution of the judgment of Mrs. W. M. Burns against her husband, and that he became indebted to his wife in the sum of $1847 24, her heritable share in the purchase price of the lands and of the remnant of the judgment.

The argument that he could not purchase at the sale, because he was administrator of the succession, is fallacious. The inhibition of the law in such cases has reference to property, movable and immovable, intrusted to his administration. C. C. 1146. The lands which Thompson is held to have purchased did not belong to the succession which he administered, and had not, therefore, been intrusted to his administration.

Thompson is further indebted to his wife in the sum of $125, received for her account from the succession of her sister, C. L. Burns, and for such amount as may have been received by him out of the proceeds of the sale of the portions of land inherited by his wife from her said sister. The record affords no satisfactory information on that score, hence we can make no final disposition of that item of their accounts. Her right to make proof thereof is reserved to her.

We now reach the point at which we differ from our learned brother of the District Court, in his reasons for declining any relief to plaintiff, under her prayer for the restitution of her paraphernal property, as well as for the dissolution of the community. It is settled as one of the landmarks of our jurisprudence that the wife has the right of demanding the administration of her paraphernal property, previously confided to her husband, whenever she chooses. C. C. Arts. 2387, 2391, Irby vs. Weber, 35 Ann. 808, and authorities cited. In this case the demand is cumulative, and it includes also the action provided for in Article 2425 of the Civil Code, for a separation of property. We find the evidence sufficient to entitle her to both reliefs.

It is true that in these pleadings intervenors deny the alleged disorder of the husband's affairs, and on trial they made an effort to show his solvent condition. But the very fact of their intervention is, to our minds, the best proof of the disorder of Thompson's affairs, as sufficiently dangerous at least to alarm his judgment creditors. If Thompson is not only solvent, but, as they allege, actually wealthy, why should they have been concerned about the business or moneyed transactions which had been projected between himself and his wife, or the litigation which she had begun against him? The answer to that question is the danger to which their judgments were exposed for fear of not finding sufficient and available property for the satis-

Burns vs. Thompson.

faction thereof. And, after all, these intervenors have no interest to regulate the question of the dissolution of the community *vel non* between Thompson and his wife. The utmost extent of their concern in the affairs of these spouses, is to restrict the moneyed judgment which the wife may obtain against the husband within legal limits, and to uncover as much of the husband's property as may be necessary to satisfy their just demands. As already stated, we find that the wife is entitled to judgment against her husband in the sum of $1847 24, received from the succession of her mother, and in the additional sum of $125 inherited from the succession of her sister.

. But we cannot favorably consider her prayer for interest at the rate of 8 per cent per annum from the respective dates at which the sums were received by the husband.

Having found from the record that the husband had received, and had the administration of, the wife's paraphernal funds, we conclude under the law that the fruits of her paraphernal property belonged to the community and that therefore the husband owes no interest before the date of the judgment, which will dissolve the community. C. C. art. 2386; Rowley vs. Rowley, 19 La. 581; Succession of Weldon, 36 Ann. 851.

The claim of interest, and at the rate of 8 per cent per annum, as well as a mortgage by agreement of parties, is predicated on an instrument purporting to be an act of conventional mortgage, executed between the husband and his wife on the 21st of February, 1883, and recorded in the mortgage office on the same day.

We hold that, as a contract, the act in question is simply a prohibited nullity, and that as such it created no obligation on the part of the husband to pay interest at any rate, and that it could create no mortgage, if none existed under the operation of law, irrespective of the will or act of the parties to the instrument.

The general rule of law, as clearly enunciated in article 1790 of our Civil Code, is that husbands and wives are absolutely incapacitated from contracting together; the only exception being contained in Article 2446 of the Code which enumerates the circumstances under which they may participate in contracts of sale from one to the other.

But the plaintiff contends that even if the act be stripped of all effect as a contract, due consideration must be given to its inscription, as notice of the tacit mortgage which, under the law results from the recitals therein contained.

On inspection, it appears that the act does contain the statement by

the husband of large amounts received and appropriated by him, of the paraphernal funds of his wife.

Under the provisions of section 1 of Act No. 95 of 1869, which was intended to carry into effect article 123 of the Constitution of 1868, concerning the inscription of legal or tacit mortgages, the husband is authorized to make a written statement of the facts and circumstances under which the wife may have acquired claims against him, for the purpose of inscription. But as the law requires the statement to be sworn to, the question arises whether the husband's statement in this case, which is not sworn to, but is made in an authentic form before a notary public and in the presence of two witnesses, would be a compliance with the law, or would have the same effect as the inscription of the sworn statement described in the act.

Considering that the only effect attributed by the law to such an inscription, is notice; and that the instrument when recorded, "shall in no manner be evidence of the validity of the debt or claim, other than the law may award to acts of the kind unrecorded; (section 10, Act 95 of 1869); and that the difference for the purposes of notice by inscription, between a sworn and an authentic declaration, is not easily discernible, we feel justified to hold that the inscription of the act of February 21, 1883, as an authentic statement of Thompson that he had received paraphernal funds of his wife in a sum of $5000, is sufficient as a notice that his wife had a paraphernal claim against him, the real amount and the correct date of its receipt and other facts and circumstances connected therewith being left to proof *aliunde*, when the time came for the enforcement of the mortgage. Hence, as notice and for no other purpose, the declaration is entitled to legal considertion.

Our jurisprudence has always recognized a broad distinction in law between the effect of registry of an act, as to notice, and the effect of such an act as proof of the contract which it purports to evidence. Allen, West & Bush vs. Whetstone, 35 Ann. 847; Stallcup vs. Pyron, 33 Ann. 1249, and authorities therein cited.

In construing the effect of inscriptions made under the provisions of the Act of 1869, this Court held that, for the purposes of notice the inscription of a tutor's affidavit of the amount which he owed to his ward was sufficient, although the law required the inscription of an abstract of the inventory. Broussard vs. Segura, 35 Ann. 912.

We shall therefore give effect to plaintiff's mortgage from February 21, 1883, on the amount which we have found in her favor, as above stated.

Burns vs. Thompson.

The only question now remaining for discussion is the alleged nullity of the *dation en paiement* of Thompson to his wife under date of November 14, 1883.

The consideration of the transfer therein made to the wife of property valued at $7635, consists of the admitted indebtedness of the husband in the sum of $5000 for paraphernal funds received on January 1, 1866, and in the additional sum of $8600 as proceeds of a sale of a plantation represented to be the separate property of the wife, sold to R. F. Harrison in November, 1871.

From the record it appears that Thompson and his wife owned together one undivided half of that plantation acquired as follows: by the two jointly eleven-thirty-seconds, and by Thompson alone five-thirty-seconds.

The record does not show that the payment attributed to the wife was made with her paraphernal funds of which she had retained the administration. It appears to our satisfaction that the funds thus disbursed as hers proceeded from the sale of the lands which had been purchased in her name at the sale in execution of her mother's judgment, and those funds have been shown to belong to the community.

That the property thus purchased in the joint name of the two spouses fell into the community is a question not open to discussion under our system. C. C. 2334; Rouse et al. vs. Wheeler, 4 Robinson 114; Tally vs. Steffner, 29 Ann. 583. Hence it was no debt from the husband.

In reference to the sum of $5000 of alleged paraphernal funds which formed part of the consideration of the pretended sale, we have already shown in another part of this opinion that no such claim ever existed, and that no attempt was even made on trial to prove its existence. It follows therefore that there was no consideration, such as was made the basis of the act, in the minds of the parties for the so-called *dation en paiement*, and hence it must fall as a nullity. Isaacson vs. Mentz et al., 33 Ann. 595; Chaffe vs. Scheen et al., 34 Ann. 688.

It is, therefore, ordered, adjudged and decreed that the judgment of the district court be annulled, avoided and reversed; and, proceeding now to render such a judgment as, in our opinion, should have been rendered below, it is ordered, adjudged and decreed that plaintiff Sallie E. Burns do have and recover judgment against the defendant, George W. Thompson, in the sum of nineteen hundred and seventy-two dollars and twenty-four cents ($1972.24) with legal interest thereon from the date of this judgment, with recognition of a legal mortgage in her favor on all the immovable property of her said husband, to take effect from the 21st of February, 1883, restoring to her the administra-

tion of her separate and paraphernal property, and dissolving the community of acquets and gains heretofore existing between herself and her said husband, reserving her right to claim against her husband such additional sums as he may have received for her as the proceeds of sales of lands inherited by her from her sister, Cornelia L. Burns.

And it is further ordered that the act of transfer as a *dation en paiement* from G. W. Thompson to his wife, plaintiff herein, under date of November 14, 1883, be declared to be null and void, and that it be set aside. All costs to be paid by the Defendant G. W. Thompson.

Mr. Justice Watkins recuses himself, having been of counsel.