**149 So. 363**

### Succession of DUTIN.

### No. 32055.

May 29, 1933.

Rehearing Denied July 7, 1933.

Pomes & McCabe, of New Orleans, for appellants Mrs. Octavie Ader and others.

Joseph Lautenschlaeger, of New Orleans, for appellee Alfred Dutin.

LAND, Justice.

On November 2, 1915, Alfred Dutin married Louise Ader, widow of Bernard Jacomet. She died intestate in the city of New Orleans, January 30, 1931, without forced heirs. At the time of her death, she was survived by her husband, Alfred Dutin; a sister, Octavie Ader, wife of Henry Bernissan, a resident of New Orleans; Maximin Ader, a brother; Zelie Ader, a niece; and Augustin Ader, a nephew, all residents of France.

Under allegations that all of the property had been acquired during his marriage to Louise Ader, the husband, Alfred Dutin, was placed in possession of one-half of the property by judgment of court, of date February 20, 1931, as the sole heir of his deceased wife, and of the other half, as surviving husband in community. The collateral heirs of Louise Ader Dutin were not made parties to this proceeding.

On February 28, 1931, her collateral heirs intervened in her succession and alleged that the petition filed by Alfred Dutin to be placed

in possession was false and untrue; that, at the time of his marriage to decedent, he had no property, but that decedent had an estate worth in excess of $18,000, which was placed in his possession and under his control, and was used by him for the benefit of the community of acquets and gains; and that the community estate is indebted to the separate estate of decedent for that sum, and that interveners should be placed in possession of the separate estate.

From a judgment rejecting their demands and dismissing their suit, interveners have appealed.

■■ 1. If interveners have any rights at all, they are to an accounting for the separate property Louise Ader Dutin had, and for which the community, now represented by Alfred Dutin, would be responsible.

Interveners attempt to compel defendant, Alfred Dutin, to account to them for the following items:

(a) A note of the Crescent City Carbonate Company . . . . . . . . . . $ 3,000.00

(b) Proceeds of sale of Allen Street property, N. O. . . . . . . . . . . . . . . . . 4,325.50

(c) Proceeds of sale of St. Peter Street property, N. O. . . . . . . . . . . 3,500.00

(d) Proceeds of sale of one-half interest in restaurant, Iberville St., N. O. . . . . . . . . . , . . . . . . . . . . . . 3,000.00

(e) Proceeds of sale of other one-half interest in restaurant, Iberville Street, N. O. . . . . . . . . . . . . . . . 450.00

Total . . . . . . . . . . . . . . . . . . . . . $14,275.50

As to the Crescent City Carbonate Company's note of $3,000, defendant has produced the passbook of his wife, issued to her by the Canal Bank of New Orleans. The entries show withdrawals of this amount, and defendant testifies that all of these sums were received by his wife.

As to the proceeds of the sale of the Allen street property, $4,325.50, defendant testifies that the check for this amount was delivered to him in the Iberville street restaurant by his wife as a manual gift, and in this statement defendant is corroborated by a witness by the name of L. M. Pfisterer, who is engaged in the dental business.

This witness gives all the circumstances as to time, place, and the conduct of the parties at the time. He was in the restaurant on Iberville street at the time of the delivery of the check, about 11 o'clock in the forenoon. He had known the parties for some time, was on friendly terms with them, and visited their restaurant quite often. In speaking of the incident, the witness stated: "I was sitting there, and they came in, and they were around at the desk for a while, and finally she came over and gave him a piece of paper. She said, 'Here, that is for you,' and she went back to the kitchen, like her custom was, and he sat down by me, and we were talking about different things, some things that I went to see him about, and incidentally I ate lunch there, and that is what happened in this case. Then Mr. Dutin showed me this piece of paper, and he said, 'What do you think of that, ain't it nice?' "

This check, dated March 26, 1921, is for the sum of $4,325.50, and is payable to the order of Mrs. A. Dutin. It is indorsed by Louise Dutin, A. Dutin, and Mrs. A. Dutin. The check was drawn originally on the Hibernia Bank & Trust Company, but was cashed by the Whitney Trust & Savings Bank, Morgan

State Bank, through the New Orleans Clearing House.

There is nothing in the argument that the check was not a manual gift because, at the date of its delivery, in the Iberville street restaurant, it was made payable to the order of Mrs. A. Dutin but was indorsed by Louise Dutin, since Louise Dutin and Mrs. A. Dutin are one and the same person.

Be that as it may, later the check was properly indorsed by Mrs. A. Dutin and by A. Dutin, her hubsand, before it was cashed, and delivery was then made, thereby perfecting the manual gift.

As to the proceeds of the sale of the St. Peter street property, $3,500. The purchase price was paid in Liberty bonds to the amount of $1,100, and the balance in notes. It appears from the uncontradicted testimony of defendant that his wife received the bonds, sold them to the Canal Bank, and used the money while she was on a trip to France with defendant, and that the notes for the balance were paid the bank while they were in France, and that this sum was later spent by his wife on a second trip to that country.

As to the proceeds of the sale of one-half interest in the restaurant on Iberville street, $3,000, and as to proceeds of the sale of the other half, $450. At the time Alfred Dutin married Louise Ader, widow of Bernard Jacomet, in the year 1915, she was conducting a restaurant on Iberville street. About three weeks after the marriage, Alfred Dutin, formerly a waiter in Antoine's restaurant, took charge of the management of the restaurant, and his wife of the culinary department.

In the year 1920, a half interest was sold to Henry Bernissan by Mrs. Louise Ader Dutin for $3,000, and in 1922, when the restaurant was discontinued, the whole was sold for $900, one-half, or $450, being the part of the purchase price received by her.

Both of these sums were used by Alfred Dutin for the benefit of the community. But as an offset to this claim by the collateral heirs of Mrs. Alfred Dutin, defendant shows that he spent out of his own funds $645.10; the attorney for the succession of Bernard Jacomet receiving $280.60 for opening the succession, and the balance being used for paying state and city licenses for the restaurant, in which a barroom was then conducted. T. p. 40.

In addition to this, it is admitted that in 1916 Alfred Dutin, at the request of his wife, paid for her daughter's furniture the sum of $485; that in 1917, at the request of his wife, he paid for a secondhand Chalmers car for her daughter the sum of $400; and that in 1919, at the request of his wife, he paid for an Oldsmobile car for her daughter the sum of $2,050. And finally he paid the funeral expenses of his deceased wife, amounting to $436.

It appears from the above statement that the total paid by Alfred Dutin, out of community funds, for the exclusive benefit of the daughter of decedent, and at her request, amounts to $2,935. The community received no benefit from these payments whatever, and is entitled to charge these amounts to the paraphernal estate of the deceased, who must have intended these sums either as donations, or as an advance made to her daughter on her share in decedent's estate.

As the total indebtedness of the paraphernal estate of decedent to the community is $4,016.10, and the indebtedness of the community to the paraphernal estate, claimed by

the collaterals, is $3,450, defendant has more than accounted for the paraphernal funds received by him.

Jeanne Jacomet, later the wife of Charles Ferran, was the only child born of the first marriage between Louise Ader and Bernard Jacomet.

On September 27, 1915, or a little over a month before the marriage of Alfred Dutin to Jacomet's widow, she had the interest of the minor in her father's estate adjudicated to her. The inventory upon which the adjudication was based shows cash on deposit in Morgan Bank & Trust Company in the sum of $137.74 and in the Canal Bank & Trust Company in the sum of $240.

Defendant also testified that, when decedent's daughter died, decedent did not receive any money from her estate, but waived all of her rights.

It appears, therefore, that defendant has made a full and complete accounting for all paraphernal funds received by the community existing between him and his deceased wife.

Judgment affirmed.