155 So. 765

**GUSS v. MATHEWS (GRETNA TRUST & SAVINGS BANK et al., Interveners).**

No. 32277.

May 21, 1934.

J. C. Cappel and F. B. Cappel, both of Alexandria, for appellant.

Winston K. Joffrion and S. Allen Bordelon, both of Marksville, for interveners and Citizens' Bank & Trust Co.

ODOM, Justice.

On October 26, 1931, Thomas M. Mathews, plaintiff's husband, made affidavit before a notary public that he was indebted to his wife in the sum of $16,650, representing money and other property which he had received from her since their marriage, which money and property were her separate and paraphernal funds which he had converted to his own use. The affidavit was recorded in the mortgage records of the parishes of Rapides and Avoyelles on October 27.

Thomas M. Mathews at the time he made and recorded this affidavit was heavily indebted to the Gretna Trust & Savings Bank, Canal Bank & Trust Company, and the Citizens' Bank & Trust Company, in liquidation. In March, 1932, the Gretna Trust & Savings Bank filed suit against Mathews and his wife praying for a money judgment against Mathews and also attacking the purported mortgage resulting from the recordation of the

affidavit of indebtedness which Mathews had made in favor of his wife. It alleged that the affidavit was false and fraudulent and that the recordation thereof operated as a cloud upon the title of the property belonging to Mathews and was prejudicial to its interest. It prayed that the same be declared fraudulent and erased from the records. The Citizens' Bank & Trust Company, in liquidation, filed a similar suit on March 31, 1932. The Canal Bank & Trust Company at the time had a judgment against Mathews.

On April 18, 1932, Mrs. Mathews brought the present suit against her husband for a dissolution of the community existing between them and for separation of property on the ground that he was heavily indebted, hopelessly insolvent, and that her separate property was endangered. She prayed for judgment against him for $16,650, being the amount of her paraphernal funds which he had received and used, and for recognition' of her legal mortgage resulting from the recordation of the affidavit made by her husband. She alleged that she owned as her separate and paraphernal property all of the household and kitchen furniture then in the house occupied by them as a dwelling, and prayed that she have judgment recognizing her ownership thereof.

The defendant answered, admitting the allegations of plaintiff's petition. The above-named creditors filed interventions in the wife's suit, opposing the separation. They attacked the wife's legal mortgage on the same grounds which the Gretna Bank & Trust Company had set up in its original petition. All of the cases were consolidated and tried together by agreement. The district court rendered judgment in favor of plaintiff, Mrs. Mathews, dissolving the community and granting her a separation of property, but set aside the purported legal mortgage and refused to recognize her claim against her husband. The court also refused to recognize Mrs. Mathews' claim to the furniture. From this judgment Mrs. Mathews appealed.

Thomas M. Mathews and Annie Guss were married at the latter's home in Jonesville, Catahoula parish, on January 30, 1907, at which time Annie Guss owned in her own name and right a hotel, two stores, and several tenant houses. She was then personally conducting the hotel, was engaged in the mercantile business, and was leasing the tenant houses. In addition to her real estate, she had on hand something like $10,000 in cash. Mr. Mathews was then cashier of a bank in Jonesville, and was being paid a salary of $125 a month. He had no property at the time and no other income. Later on he inherited considerable property from his mother's estate and acquired some real estate by purchase.

Mr. Mathews had previously lived in Avoyelles parish, and, a short time after his marriage, returned with his wife to that parish, where they have resided ever since.

Mrs. Mathews held her real estate in Jonesville until 1918, when she sold it. From the time the couple left Jonesville in 1908 to the date on which the property was sold in 1918 it was leased by Mrs. Mathews and yielded revenues amounting to more than $14,000. Mrs. Mathews testified that of this sum her husband received and converted to his own use $2,500, $2,000 of which amount

having been used in the payment of a mortgage due by him on his farm near Lecompte, and an additional portion used by him in paying for sidewalks in front of property owned by him. Mrs. Mathews says she used the remaining portion of these revenues in various ways; some in buying stocks. She kept an account in her name in the savings department of a bank, and had at one time between $8,000 and $9,000 to her credit. From these savings she purchased 78 shares of Standard Oil Company stock amounting to $3,900, 20 shares of Bethlehem Steel Corporation stock amounting to $900, and 50 shares of Ford of France stock amounting to $750. Dividends were regularly paid on all these stocks and went into her hands; the exact amount of which not being stated. These stocks were all delivered by Mrs. Mathews to her husband, pledged by him to secure his debts, and finally sold by the pledgees.

In 1918 Mrs. Mathews sold her hotel building in Jonesville for $4,000, a store building for $2,900, and other real estate for $1,950, making a total received for real estate of $8,850. Both Mr. and Mrs. Mathews testified that this entire amount went into his hands and was used by him for his separate benefit. This amount, added to the $2,500 cash which came from Mrs. Mathews' rents, makes a total of $11,350 which plaintiff swears that she turned over to her husband and which he swears that he received. The testimony shows that Mr. Mathews used a portion of this money to pay the price of a lot purchased in his name, a portion of it in erecting improvements on real estate owned by him, part of it in paying a mortgage on his property,

and the balance in paying for sidewalks laid on his property.

As the uncontradicted testimony shows that the husband received and used this amount of his wife's paraphernal funds, she is entitled to judgment for said amount. She is entitled also to judgment for the value of the stocks which she turned over to him and which he pledged, and which were later sold by the pledgees. She should have credit for the value of these stocks at the time she delivered them. But, as the testimony is not clear as to their value at that time, and as the record shows that they were sold by the pledgees for $2,188.68 a short time after they were pledged, we must assume that they were worth that amount when delivered by plaintiff to her husband.

The record therefore is clear that plaintiff turned over to her husband $8,850, the proceeds of the sale of the real estate in Jonesville, $2,500 received by her as rents and the stocks valued at $2,188.68, or a total of $13,538.68.

Plaintiff alleged that her husband was indebted to her in a sum exceeding $17,000, aside from the value of the stocks which she had delivered to him, and which he had converted. She claimed credit for $5,000 cash which she had handed to him about three months after their marriage. Her own statement, however, shows that this was a manual gift. We quote her testimony in the record at page 67, as follows: "I just gave it to him and told him it was his. I gave it to him."

The testimony shows that plaintiff handed $5,000 in currency to her husband in the pres-

ence of several witnesses, and, while some of them testified that she told him at the time to deposit the money in the bank to her credit, and while she stated at one time that she intended that the money be so deposited, we must accept her final statement that she "just gave it to him and told him it was his. I gave it to him."

"The manual gift, that is, the giving of corporeal movable effects, accompanied by' a real delivery, is not subject to any formality." C. C. art. 1539.

In Succession of Dutin, 177 La. 675, 149 So. 363, it was held that the community did not have to account for a manual gift made by the wife to the husband.

■■ There is some discrepancy as to items between the allegations of plaintiff's petition and the affidavit made and recorded by the husband. Some of the items set out in the affidavit exceed those set out in plaintiff's petition. But the record shows that those set out in the petition are correct. While Mr. Mathews was on the witness stand, his counsel asked that he be permitted to explain the errors made, but the court refused to permit him to do so. This, however, is a matter of no moment, because our findings as to amount due the plaintiff are based upon the allegations of the petition and the testimony, both oral and documentary. The amount which we find due is less by $3,135 than the amount specified in the affidavit. The wife's right resulting from the recordation of this affidavit can be recognized only to the extent of the amount which we find actually due, or $13,588.68.

The creditors attack the plaintiff's claim for the reasons, quoting from their counsel's brief, "that he (the husband) did not receive the money which she claims to have given him, that, if he did receive any money, part of it was a manual gift and the remainder rents and revenues of her separate property which were being administered by her husband * * * and therefore community property for which she could have no claim."

As to the item of $5,000 handed by the wife to her husband in Jonesville, we have already said that it was a manual gift for which the husband does not have to account.

■ We shall not go into further detail as to whether the husband received the amounts above shown. It suffices to say that the record discloses to our entire satisfaction that he did receive these amounts and that they were the wife's separate, paraphernal funds. It is argued by counsel for interveners that all of the property owned by Mrs. Mathews was administered by her husband, or by her and her husband indifferently, for which reason the revenues fell into the community and were not her separate property. C. C. arts. 2386, 2402. The testimony shows, however, that the husband never at any time administered this property. On the contrary, it was always under the control and management of Mrs. Mathews. After the couple left Jonesville, where all the property was situated, it was looked after by relatives of Mrs. Mathews, who collected the major portion of the revenues and remitted them to her by check at Bunkie, La. Some of these checks went into the hands of Mr. Mathews, who cashed them and used the proceeds. Mrs.

Mathews testified that she always consulted her husband with reference to business transactions, but that she had never at any time left her property to his management. He gave testimony to the same effect, and their testimony is corroborated by that of her relatives in Jonesville who looked after the property for her.

In plaintiff's petition, the following allegation appears: "And that during their marriage, her said husband collected rents and revenues from her paraphernal property amounting to twenty-five hundred dollars."

Counsel contend, and the trial judge seemed to think, that this allegation should be construed to mean that he had control and management of his wife's property and that plaintiff is thereby estopped to deny that fact.

What the allegation means and all it means is what it says, that the husband, during the marriage, collected rents and revenues from her property amounting to $2,500. The fact that a husband collects rents from his wife's paraphernal property is no indication that the property is under his control and management. A wife may authorize or permit her husband to collect her rents as her agent. Such was the case in Risher v. Risher, 179 La. 1, 153 So. 1.

Even if it had been proved, and it was not, that the husband administered the wife's paraphernal property, such proof would avail the interveners nothing except as to the $2,500 and the value of a portion of the stocks, because, whether the real estate was administered by the husband or not, the proceeds of its sale could on no theory fall into the community of acquêts and gains.

An effort was made to show that Mrs. Mathews had on her own account engaged in stock speculations which had resulted in a loss to her of an amount exceeding the proceeds of the real estate sold and that these proceeds had in fact been used in this manner. Interveners, however, failed in this respect. The testimony shows that not only did Mrs. Mathews turn over to her husband the entire proceeds of the sale of her real estate, but that the stocks which she purchased on her own account and on which she sustained a loss were paid for out of funds which she had saved from her revenues and deposited in the bank to her credit.

There is a statement in the record, sworn to by Mrs. Mathews, showing that, including the cash which she had on hand at the time she was married, the proceeds of her real estate, the rents and revenues which she received from her real estate and dividends which she received on stocks owned by her, amount to more than $40,000. Conceding that she had lost approximately $10,000 in the stock speculations, there is still more than $30,000 to be accounted for. At the present time she is penniless. She does not claim that her husband received all this money, but only a part of it. Our conclusion is that she has made out her case to the extent above stipulated.

She sued also for recognition of her ownership of the household and kitchen furniture now in the house used as a dwelling at Bunkie. The testimony is overwhelming to the effect that all of this furniture, except the radio, a refrigerator, and a phonograph, was owned by Mrs. Mathews at the time she was married. This is the testimony not only

of Mr. and Mrs. Mathews but of her relatives and his. There are in the record documents showing the shipment of this furniture from Jonesville to Bunkie. As to the radio, refrigerator, and phonograph, the testimony shows that Mrs. Mathews purchased and paid for them out of her own separate funds. She is therefore entitled to judgment recognizing her ownership of this furniture.

"The wife has, even during marriage, a right of action against her husband for the restitution of her paraphernal effects and their fruits, as above expressed." C. C. art. 2391.

 The wife has a legal mortgage on the property of her husband "for the restitution or reimbursement of her paraphernal property." C. C. art. 3319.

"To preserve the legal mortgage or privilege existing in favor of a married woman, it shall be the duty of such married woman, or any person for her, to cause to be recorded in the mortgage book of the parish where the property is situated the evidence of her mortgage or privilege. If such evidence be in writing, it shall be recorded in the manner required by law; if it be not in writing, then a written statement, under oath, made by the married woman, her husband, or any other person having knowledge of the facts, setting forth the amount due to the wife, and detailing all the facts and circumstances on which her claim is based, shall be recorded." C. C. art. 3349.

The statement made by the husband showing the amount he was due his wife was made in authentic form in the presence of a notary and two witnesses, but was not made under oath. Its recordation did not therefore operate as a legal mortgage on the property of the husband. The article of the Code requires that the declaration be made under oath in order to operate as a mortgage. But the statement as made "is sufficient as a notice that his wife had a paraphernal claim against him. * * * Hence, as notice, and for no other purpose, the declaration is entitled to legal consideration." Burns v. Thompson, 39 La. Ann. 377, 1 So. 913, 920; De Lesdernier v. De Lesdernier, 45 La. Ann. 1364, 14 So. 191.

The question as to what effect the recordation of this notice may have when and if Mrs. Mathews attempts to collect her judgment is not involved in this case, and as to that we express no opinion.

There was judgment in the district court in favor of Mrs. Mathews dissolving the community and granting her a separation of property. Her demands for a money judgment against her husband were rejected, and it was further ordered that the declaration made by the husband as to the amount he was due her and recorded in the mortgage records was null, void, and of no effect. There were separate judgments rendered on the interventions. These judgments, except as to the captions, are identical with the one in case of Mrs. Mathews versus her husband. These judgments are correct in so far only as they decree a dissolution of the community and grant to Mrs. Mathews a separation of property. Otherwise they are incorrect.

We find it necessary to recast the judgment rendered in Mrs. Mathews' suit, and, inasmuch as the issues raised by the interventions are disposed of by our holding in

that suit, we think it unnecessary to render separate judgments.

Proceeding now to render such judgments as should have been rendered, it is ordered and decreed that there be judgment in favor of Mrs. Annie Guss Mathews, wife, and against Thomas M. Mathews, husband, decreeing a dissolution of the community of acquêts and gains heretofore existing between them; and further ordering that there be a separation of property between plaintiff and defendant.

It is further ordered, adjudged, and decreed that the plaintiff, Mrs. Annie Guss Mathews, wife, do have judgment against and recover from the said Thomas M. Mathews the full sum of $13,558.68, representing paraphernal funds received by him from her.

It is further ordered that Mrs. Annie Guss Mathews be and she is hereby decreed to be the owner in her own name and right of all the furniture in the house now occupied by Mr. and Mrs. Mathews as a dwelling.

It is further ordered and decreed that the declaration made by Thomas M. Mathews, husband, before a notary public and two witnesses on October 26, 1931, and recorded the following day in the mortgage records of the parishes of Rapides and Avoyelles, this state, be and the same is hereby recognized to be sufficient as notice that his wife had a paraphernal claim against him and that said recorded declaration be given such effect as the law provides.

It is further ordered that the demands made in the interventions filed herein be rejected and that said interventions be dismissed.

The costs incurred by the filing of the suit of Mrs. Annie Guss Mathews against her husband, Thomas M. Mathews, and by the filing of his answer are to be paid by him. It is ordered that all other costs in both courts be paid by the interveners.