223 So.2d 238 (1969)
O. B. GREGORY, Sr., Plaintiff-Appellee,
v.
Irene Walker GREGORY, Defendant-Appellant.
No. 2636.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1969.
*240 E. L. Edwards, Jr., Mary, for defendant-appellant.
Gahagan & Gahagan, by Russell E. Gahagan, Natchitoches, for plaintiff-appellee.
Before TATE, HOOD and CULPEPPER, JJ.
HOOD, Judge.
Plaintiff, O. B. Gregory, Sr., seeks to recover from his former wife, Mrs. Irene Walker Gregory, one-half the enhancement in value of her separate property resulting from improvements which allegedly were placed thereon at community expense. The defendant answered denying that community funds were used to construct improvements on her separate property. She also filed a reconventional demand claiming one-half the value by which plaintiff's separate property allegedly was enhanced by community financed improvements. Judgment on the merits was rendered by the trial court in favor of plaintiff for $4,634.50, and in favor of defendant for $1,043.88. The defendant, Mrs. Gregory, has appealed.
Plaintiff and defendant were married on January 24, 1955. They lived together in Pleasant Hill, Louisiana, from that date until April 11, 1961, when defendant left the matrimonial domicile and established a home of her own in the same community. They were divorced on November 12, 1965.
During the marriage, and while the parties were living together, Mrs. Gregory acquired a lot of ground in Pleasant Hill, which lot was formally decreed to be her separate property in the 1965 judgment which granted her a divorce from plaintiff. Between January 26, 1960, and April 11, 1961, defendant constructed a residence building on that lot at a cost of $9,268.99, and it has been stipulated that as a result of the construction of that improvement defendant's separate property was enhanced in value to that extent.[1]
Plaintiff's demands in this suit are based on LSA-C.C. art. 2408, which provides:
"When the separate property of either the husband or the wife has been increased or improved during the marriage, the other spouse, or his or her heirs, shall be entitled to the reward of one half of the value of the increase or ameliorations, if it be proved that the increase or ameliorations be the result of the common labor, expenses or industry; but there shall be no reward due, if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade."
In this suit the trial judge concluded that the cost of constructing the house was paid from community funds, and he awarded plaintiff one-half the enhancement in value, *241 or the sum of $4634.50. Defendant contends that the trial court erred in arriving at that conclusion, and an issue thus is presented as to whether the residence building which was constructed on Mrs. Gregory's separate property was paid for with her separate funds or with community funds.
At the time of their marriage, Mrs. Gregory owned two tracts of farm land which she had acquired some time prior thereto. She also had two bank accounts, one of which was a checking account in the Bank of Pleasant Hill containing $1,938.98, and the other was a checking account in the First National Bank of Mansfield containing $713.02. These funds were acquired by defendant prior to her marriage, and thus they belonged to her separate estate immediately after that union. Both accounts were in her name and under her exclusive control at the time of her marriage, and she has continued to maintain exclusive control over those accounts since that time. During her marriage she opened a savings account in the last named bank, and that account also remained under her exclusive control.
Mrs. Gregory was employed by the Bank of Pleasant Hill during the entire time she was married to plaintiff, and she deposited her salary payments in her checking account in that bank. She also received other income during her marriage, including rents from her farm land, bonuses and delay rentals from oil, gas and mineral leases affecting her separate property, and proceeds from the sale of some of her separate property. Practically all of the funds which she received from these sources were deposited in her checking account in the Bank of Pleasant Hill, and thus all of the sums which she received during her marriage were comingled in the same account with the funds which she had accumulated prior to that time.
The record shows that after the parties married on January 24, 1955, Mrs. Gregory deposited the following sums in her various bank accounts; most of which deposits were made in her checking account in the Bank of Pleasant Hill:

1. Wages which she received from the date of her
 marriage until April 11, 1961, when she separated
 from her husband $11,350.68
2. Rent from her separate property, consisting of
 farm land 2,651.71
3. Proceeds from sale of hay raised on her separate
 property 142.25
4. Interest on a promissory note representing the
 balance due on the purchase price of separate
 property sold by her 360.00
5. Bonus and delay rentals from oil, gas and mineral
 leases on defendant's separate property 2,807.56
6. Proceeds of the sale of real property, belonging
 to defendant's separate estate 3,500.00
7. Proceeds from the sale of a pick-up truck, belonging
 to defendant's separate estate 550.00
8. Money borrowed from Bank of Pleasant Hill
 while the parties were living together, but repaid
 by defendant after they separated 1,000.00
 __________
 TOTAL $22,362.20

*242 The record also shows that many withdrawals were made from defendant's checking accounts during her marriage. For instance, she withdrew sums aggregating $7,450.00 from one of said accounts and paid those sums to plaintiff to assist him in financing his tie and timber business. Mr. Gregory subsequently repaid this amount to defendant from money which he earned in that business during the marriage. Mrs. Gregory withdrew various sums which she used in purchasing real estate and stock in an insurance company. She also withdrew sums aggregating $9268.99 to pay the cost of constructing a house on her separate property, as has already been mentioned. She withdrew funds from the Bank of Pleasant Hill to deposit in the savings account which she maintained in another bank, and she testified that she made withdrawals from her account to buy clothes, to pay upkeep on a truck which she owned, and to pay insurance premiums, taxes, doctor bills, cosmetics, contributions to her church, and other expenses. The evidence does not show how much money Mrs. Gregory had in her various checking accounts at the time she discontinued living with her husband, but she concedes that by that time her accounts had been depleted to the extent that it was necessary for her to borrow $1,000.00 to finish paying the bills which she had incurred in building a house on her separate property.
Article 2386 of the Louisiana Civil Code provides, in part, that:
"The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone. The said instrument shall be executed before a Notary Public and two witnesses and duly recorded in the Conveyance Records of the Parish where the community is domiciled."
Defendant admits that she did not execute and record an instrument declaring that she intended to reserve the fruits of her labor or the fruits of her paraphernal property for her separate use and benefit. She concedes that the wages which she earned while married to and living with plaintiff and the rent which she received from the farm lands belonged to the community. But, she contends that the proceeds of the sale of her separate property, the bonuses and delay rentals which she received from leases of her separate property and the amount she borrowed from the bank were her separate property.
By adding the sum which she had in her bank accounts at the time of her marriage, that being $2652.00, to the lease bonuses, delay rentals, proceeds of the sale of her separate property and the amount she borrowed from the Bank of Pleasant Hill, all of which were received after her marriage, she computes that $11,269.21 of her separate funds were accumulated in her bank accounts while she was living with plaintiff. She alleges that all of the money used in paying the cost of constructing the house on her separate property was paid from her separate funds. And, we interpret her testimony to be that all of these payments were made by checks drawn on her checking account in the Bank of Pleasant Hill.
When improvements are placed on the separate property of one of the spouses during the marriage there is a presumption that these improvements were paid for with community funds. The spouse alleging that separate funds were used to construct the improvements has the burden of overcoming this presumption and proving with reasonable certainty that separate funds were used and that community funds were not used for that purpose. Giamanco v. Giamanco, 131 So.2d 159 (La.App.3d *243 Cir. 1961); Smith v. Garrison, 137 So.2d 505 (La.App.3d Cir. 1962).
As already noted, Mrs. Gregory received the aggregate sum of $11,350.58 as wages while she was living with plaintiff. These wages became a part of her community estate. She deposited all of the wages which she received during that period of time in her checking account in the Bank of Pleasant Hill. (See Item 1 of the above list of deposits). These community funds, therefore, became co-mingled with the separate funds which she had in that account at the time of her marriage.
During her marriage, and while living with plaintiff, defendant received $2651.71 as rent for her separate property, consisting of farm land, and she acknowledges that these rental payments also belong to the community. She testified that some of these rentals were deposited in a savings account in the First National Bank of Mansfield and some of them were deposited in her checking account in the Bank of Pleasant Hill. These rental payments are listed as Item 2 in the list of deposits hereinabove set out.
Mrs. Gregory also received and deposited in her accounts $142.25, being the proceeds from the sale of hay raised on her separate property, and $360.00 as interest on a promissory note which evidenced the balance due on the purchase price of separate property sold by her. These amounts, identified as Items 3 and 4 in the above list of deposits, also belong to the community, since they are fruits of her paraphernal property. See LSA-C.C. art. 2386; Vining v. Beatty, 161 So.2d 298 (La.App.2d Cir. 1964); Matthews v. Hansberry, 71 So.2d 232 (La.App.Orl.Cir. 1954).
Item 5 of the above list of deposits shows that defendant also received and co-mingled with her other funds bonuses and delay rentals from oil, gas and mineral leases affecting her separate property, amounting to the aggregate sum of $2807.56. She contends that this amount belongs to her separate estate, citing as authority for that argument the cases of United States v. Harang, 165 F.2d 106 (5th Cir. 1948), certiorari denied, 334 U.S. 811, 68 S.Ct. 1017, 92 L.Ed. 1743; and Commissioner of Internal Revenue v. Gray, 159 F.2d 834 (5th Cir. 1947). The court indicated in the cited cases that income derived from mineral leases on the husband's separate property did not fall into the community. The Supreme Court of Louisiana arrived at a different conclusion, however, in Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679 (1952). There the court, after noting and refusing to follow the ruling in the Gray case, supra, held that rents, royalties and bonuses received by the husband from oil, gas and mineral leases on his separate property fall into the community. The court stated:
"The fruits, both civil and natural, of the husband's separate property fall into the community during its existence, Succession of Goll, 156 La. 910, 101 So. 263; Peters v. Klein, 161 La. 664, 109 So. 349; Succession of Ratcliff, 212 La. 563, 33 So.2d 114, for the community `consists of the profits of all the effects of which the husband has the administration and enjoyment * * *.' Art. 2402, R.C.C. This being true, we know of no compelling reason, nor has any been advanced, why the rentals paid in the form of royalty under a mineral lease on the separate property of the husband should form a part of his separate income, whereas the rentals paid in the form of shares of the crops growing on the same land would fall into the community since the one is a portion of the production of the minerals, and the other a portion of the crop production."
Our brothers of the First Circuit Court of Appeal followed the Milling case, supra, in Lagle v. Marchand's Estate, 129 So.2d 849 (La.App.1st Cir. 1961), holding that oil royalties received by the husband from property belonging to his separate estate belonged to the community.
In view of the decisions rendered in the Milling case, supra, we conclude that the *244 bonuses and delay rentals which defendant received while married to and living with plaintiff belonged to the community which existed between those parties. Item 5 in the list of deposits, therefore, must be classified as a deposit of community funds.
The proceeds of the sale of defendant's separately owned real estate and a pickup truck must be regarded as her separate funds. Houghton v. Hall, 177 La. 237, 148 So. 37 (1933); Guss v. Mathews, 179 La. 1033, 155 So. 765 (1934); Byrd v. Babin, 181 La. 466, 159 So. 718 (1935). Items 6 and 7 in the list of deposits, amounting to the aggregate sum of $4050.00, thus will be classified as separate funds which were comingled with other money in defendant's accounts.
Defendant contends that Item 8 in the list of deposits, being the sum which she borrowed from the bank, belonged to her separate estate because she repaid that loan from fruits of her labor after she discontinued living with her husband. We think it is immaterial whether this item is classified as separate or community funds, for reasons which will be set out more fully later, and we thus make no determination of that issue.
The evidence establishes therefore, that at the time the parties were married Mrs. Gregory owned separate funds in her bank accounts aggregating the sum of $2652.00. Thereafter she deposited in those accounts other sums which belonged to her separate estate aggregating not more than $5050.00. During the same period of time, while she was living with plaintiff, she also deposited in the same accounts community funds which amounted to the aggregate sum of $17,312.20. Her separate funds were thus co-mingled with community funds. Many withdrawals were made from these accounts during that time, the evidence indicating that the accounts were almost depleted when defendant discontinued living with her husband.
When separate funds are mixed or co-mingled with community funds to the extent that the separate funds are no longer capable of identification, and it is impossible to establish what part of the funds belongs either to the separate estate or to the community, then all of said funds are regarded as belonging to the community. If only a relatively small amount of community funds are co-mingled with separate funds, then the mixing of such funds will be considered as inconsequential, not sufficient to constitute a co-mingling, and it will not warrant the designation of all such funds as community property. Succession of Sonnier, 208 So.2d 562 (La.App. 3d Cir. 1968); Magnolia Petroleum Co. v. Crigler, 12 So.2d 511 (La.App.2d Cir. 1942); Smith v. Brock, 200 So. 342 (La. App.2d Cir. 1940); Succession of Land, 212 La. 103, 31 So.2d 609 (1947); Odom v. Odom, 121 So.2d 8 (La.App.2d Cir. 1960); Abraham v. Abraham, 230 La. 78, 87 So. 2d 735 (1956); Giamanco v. Giamanco, supra.
In the instant suit it cannot be said that the amount of community funds which were co-mingled with separate funds was inconsequential. The greater portion of all of the funds which were co-mingled, in fact, belonged to the community. Almost all of those funds have been withdrawn for various purposes, and it is impossible to determine whether any single expenditure was made from separate or from community funds. It is obvious that the entire cost of constructing the house on defendant's separate property could not have been paid from defendant's paraphernal funds, even if those funds had been maintained separately, because defendant never accumulated enough separate funds to pay those costs. Since the two classes of funds had been co-mingled to the extent that it was impossible to establish what part of them belonged to either the separate estate or to the community, and since it was impossible to determine whether any single expenditure was made from defendant's separate funds, we conclude that all of the *245 funds in defendant's accounts must be regarded as belonging to the community, and that the costs of constructing the residence building on defendant's separate property were paid from community funds.
We agree with the trial judge, therefore, that insofar as the principal demand in this suit is concerned, defendant is indebted to plaintiff for $4634.50, that being one-half the enhanced value of defendant's separate property.
Defendant contends, alternatively, that if all of the funds on deposit to her accounts should be held to be community funds, then she is entitled to have her separate funds returned to her. She argues that she accumulated $11,269.21 in her separate account during the marriage, that only $9,268.99 was spent to improve her separate property, and that she is entitled to recover the remaining $2,000.00 of her separate funds. As authority for that argument she refers us to LSA-C.C. arts. 2390 and 2391, and to Broyles v. Broyles, 215 So.2d 526 (La.App.1st Cir. 1968). LSA-C.C. arts. 2390 and 2391 read, in part, as follows:
"Art. 2390 * * * but should it be proved that the husband has received the amount of the paraphernal property thus alienated by his wife, or otherwise disposed of the same for his individual interest, the wife shall have a legal mortgage on all property of her husband for the reimbursing of the same."
"Art. 2391. The wife has, even during marriage a right of action against her husband for the restitution of her paraphernal effects and their fruits, as above expressed."
In Broyles v. Broyles, supra, our brothers of the First Circuit Court of Appeal said:
"The applicable provisions of the Civil Code are Articles 2390 and 2391, which provide that when a husband receives the paraphernal property of his wife, she has a right of action against him for the restitution of such amounts. In order to obtain restitution, she need only prove that her separate property, or the proceeds of a sale thereof, were delivered to her husband, and were used for his benefit or for the benefit of the community."
We find no merit to this alternate demand for two reasons.
In the first place, we have found that Mrs. Gregory did not accumulate the amount she claims in her separate account. Her separate funds, in fact, were less than the cost of the improvements which were constructed on her property, and thus there is no excess for her to recover.
Secondly, we feel that the cited articles of the Civil Code and the ruling in the Broyles case are not applicable here, because there has been no showing (1) that plaintiff, Mr. Gregory, has received any part of defendant's paraphernal funds, or (2) that he has disposed of any of her separate funds for his individual interest. The evidence, on the contrary, shows that Mrs. Gregory maintained exclusive control over all funds in her bank accounts, both separate and community, and that plaintiff did not receive or dispose of any of said funds. While there is some evidence tending to show that Mrs. Gregory gave some money to her husband which was not repaid, there is no showing that the advances made to him were from defendant's separate funds.
We turn now to a consideration of defendant's reconventional demand.
In 1959, during the marriage, Mr. Gregory purchased a residence building and had it moved on a lot of land owned by him, which lot belonged to his separate estate. He paid $1,000.00 for the building, $200.00 to have it moved on his property and $169.32 for improvements on it, making a total expenditure of $1,369.32. The evidence shows that his separate property was enhanced in value to the extent of these expenditures. *246 Plaintiff testified that he borrowed $1600.00 on a life insurance policy which had been issued to him before his marriage and which had been fully paid up as early as 1946, and that he paid all of the costs of purchasing the building, and moving and repairing it, from these funds. He repaid this loan to the insurance company during his marriage to defendant from earnings from his tie and timber business.
Plaintiff contends that the proceeds of the loan on his insurance policy were his separate funds, that community funds thus were not used to improve his separate property and that Mrs. Gregory is not entitled to recover one-half the enhanced value of that property. We agree that the proceeds of the loan on his paid up policy were the separate funds of plaintiff. The loan was repaid within a year or two with community funds, however, so the expenditure for improving plaintiff's separate estate, in effect, was from community funds. We agree with the trial court that defendant is entitled to recover one-half this enhanced value of plaintiff's separate property, or $684.66.
In 1956 Mr. Gregory made repairs to another residence building owned by him and belonging to his separate estate. These repairs cost $718.44, and the expenditures for them are presumed to have been made from community funds. Plaintiff has not shown that they were made from his separate funds, and defendant thus is entitled to recover one-half this expenditure, or $359.22.
In 1958 plaintiff made additional improvements to the last mentioned residence building on his separate property, at a cost of $842.64. The evidence shows, however, that the cost of these improvements were paid from the proceeds of an endowment policy which had been issued to plaintiff and which matured at or about the time the repairs were made. This endowment policy had been fully paid for prior to plaintiff's marriage, and the benefits which he received, and which were used by him to pay for these repairs, were his separate funds. Of course, no repayment of those endowment benefits was required. Since the last mentioned repairs to plaintiff's separate property were made with his separate funds, defendant is not entitled to recover any part of the enhanced value of that property.
For the reasons herein set out, we conclude that defendant is entitled to recover from plaintiff the total sum of $1,043.88. We believe, however, that this amount should be allowed as an offset or credit against the sum which plaintiff is entitled to recover from defendant.
We have held that defendant is indebted to plaintiff for the sum of $4,634.50. After deducting the offset or credit of $1,043.88 to which defendant is entitled, we find that plaintiff is entitled to recover the net sum of $3,590.62 from defendant. The judgment appealed from should be amended accordingly.
For the reasons herein set out, the judgment appealed from is amended and recast to read as follows:
"IT IS ORDERED, ADJUDGED and DECREED that there be judgment herein in favor of plaintiff, Otho B. Gregory, and against the defendant, Irene Walker Gregory, for the full sum of $3,590.62, with five per cent per annum interest thereon from judicial demand until paid. The costs of this proceeding are to be paid by plaintiff and defendant in the proportion of one-half each."
In all other respects, and as thus amended and recast, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Amended and affirmed.
NOTES
[1] Since the parties have stipulated as to the enhanced value of the property, it is unnecessary for us to discuss the rules which otherwise would be applicable in determining the amount of the enhancement in value.