DAWKINS, J.
This is an appeal by the' testamentary executor of the above succession from a judgment sustaining the oppossition of Mrs. Geo. D. May, divorced wife of the decedent, to the final account, and. which recognized opponent’s claim in the sum of $1,000, with legal interest from the dissolution of the community and with a privilege upon the estate.
The decedent died testate, making certain dispositions of his property, and even without the allowance of plaintiff’s claim the estate is not sufficient to pay all of the debts and to discharge the legacies. Hence, if this claim is allowed, it will further reduce the amounts coming to the legatees, who are the real parties at interest in this appeal.
Hugh McGloskey and Annie McDevitt were married December 7, 1881, and on June 15, 1896, she obtained of her said husband a judgment of separation from bed and board. A final decree was granted October 20, 1911. During the existence of the marriage, and while they were yet living together as husband and wife, to wit, December 22,1888, Mrs. McGloskey filed and had recorded in the mortgage records of Orleans parish her affidavit, setting forth an indebtedness to her by her said husband amounting to $1,000, for paraphernal funds claimed to have been used by him.
*441 In the suit for separation from bed and. board, as well as that later filed for divorce, no mention was made of this alleged indebtedness, but it was asserted for the first time in her opposition to the final account of the executor.
Opinion.
Appellant presents for our determination three questions, to wit:
First, the pleas of prescription of three and ten years; second, staleness of the claim and insufficient proof; and, third, should decedent’s separate estate be held for more than one-half of plaintiff’s claim?
"VVe shall dispose of these issues in the order set forth.
Pleas of Prescription.
[1] There seems to be little merit in the contention that the claim of the wife for paraphernal funds prescribes in 3 years, as for money loaned, under article 3538 of the Revised Civil' Code. The liability springs from other codal provisions. See, articles 2383 to 2391, inclusive. It results from the peculiar protection and safeguards which our law throws around women under coverture, and which gives, in addition to the ordinary rights of creditors, a legal mortgage upon all of the husband’s property; so much so that prior to the Constitution of 1868, her rights were preserved, though unrecorded, even against third persons. R. C. C. arts. 2390, 3319. His obligation does not arise fromi contract, because husband and wife are prohibited from contracting during marriage (R. C. O. art 1790), but flows from operation of the law. A loan of money presupposes an agreement between the parties. C. C. art. 3538. We must conclude, therefore, prescription being a matter of strict construction, that plaintiff’s claim did not prescribe in 3 years. The only other article of the Code under which it could fall is 3544, providing a prescription of 10 years for personal actions generally.
[2] Having thus found that the matter is governed by the prescription of 10 years, it becomes important to determine just when it began to run — that is, whether from the date of the separation from bed and board, or from the granting of the final divorce. Our Code provides two methods of procedure by which a divorce may be obtained: One is based upon what might be termed the serious offenses against the marriage relation, entitling the offended spouse to proceed as in ordinary actions for a prompt dissolution of the bonds of matrimony; the other, grounded upon less serious acts, requiring first a judicial separation from bed and board, and the elapsing of a period of 1 year therefrom before a final decree can be had. In the first class, the law assumes that the outraged spouse will not condone the offenses, while in the latter, its wise purpose has often been vindicated by the reconciliation and reuniting of families which have followed within the year. Both at common law and by statute, in most of the states, the spouses are prohibited from suing each other during marriage, with certain well-defined exceptions. C. P. art. 105; R. C. arts. 138 to 161, 2391 to 2396. By the same authority, prescription is suspended between husband and wife. Article 3523, R. C. C., provides:
.“Husbands and wives cannot prescribe against each other.”
See, also, articles 136, 159, and 2391, as well as the copious citation of authority in the note to Graves v. Howard, 159 N. C. 594, 75 S. E. 998, in Ann. Cas. 19140, p. 570.
The language of this article of the Code would seem conclusive, for it could hardly be contended that the relation of husband and wife does not still exist, even though separated from bed and board. They 'are not at liberty to marry again, and a reconciliation or cohabiting together at once puts an end to the proceeding by operation of law.
“Separation from bed and board does not dissolve the bond of matrimony, since the separated husband and wife (italics ours) are not at *443 liberty to marry again; but it puts an end to their conjugal cohabitation and to the common concerns which existed between them.” R. O. O. art. 136.
We quote further from article 152, c. 4, under the title of Objections to the Action of Separation from Bed and Board, and Divorce:
“The action of separation shall be extinguished by the reconciliation of the parties, either after the facts which might have given ground to such action, or after the action had been commenced.”
See, also, In re Leeds & Co., 49 La. Ann. 501, 21 South. 617.
Since the final divorce was not granted until October 20, 1911, having concluded that prescription did not begin to run until that date, we find that the plaintiff still had some 5 years within which to assert her claim at the date of McCloskey’s death and the opening of his succession in 1917.
Staleness and Insufficient Proof of the Demand.
[3] It is true that plaintiff’s claim was some 29 years old when she asserted it against this succession, and that the law does not favor such long delays, especially against a party deceased, who can no longer be heard to dispute the demand. The multitude of cases in the boohs show that people are prone to make of the dead many spurious and questionable claims which they would never demand of the living. In addition to this well-recognized principle in our jurisprudence, the Legislature of our state, in 1906, passed Act No. 207, p. 361, which further fortifies our law upon the subject. This act provides that unless the claim is made within one year, parol proof shall be incompetent to prove any debt or liability against a party deceased, unless it be supported by one creditable witness of good moral character besides the plaintiff, or unless it be corroborated by a written promise to pay signed by the debtor.
However, during the lifetime of her former husband, and while they were still living together as husband and wife, plaintiff filed in the mortgage records of Orleans parish an affidavit, as she was permitted to do by law, setting forth the facts to which she now swears concerning her claim. This was at an unsuspicious time. We must assume, since it was a matter of public1 record, that the deceased knew of it, and he permitted it to remain there during all those years unquestioned. Besides, plaintiff is supported in her statements by the testimony of her mother, who says she gave her daughter the money which the latter claims to have turned over to' her husband, out of the proceeds of an insurance policy on the life of plaintiff’s father, in accordance with the latter’s wish. It it true, Mrs. McDevitt did not see her daughter deliver the money to' her husband, nor is she able to swear that it was never repaid. Still, the circumstances are such as to render the testimony of these witnesses plausible, and to carry with it the force of conviction. The district judge, who saw and heard them testify, was so impressed, and we are constrained to agree with him.
Liability of Decedent’s Separate Estate for the Entire Debt.
[4] Defendant’s counsel urges that, even though the pleas of prescription be not good, and we should find that the claim is sufficiently proven, plaintiff should not be permitted to recover more than one-half thereof, for the reason that she was a partner in community, and therefore liable for one-half of the community debts. He cites the case of Downs v. Morrison, 13 La. Ann. 379. That was a case in which the wife had accepted the community, amounting to some $50,000, in which she by law owned a half interest, and was endeavoring to have her husband’s separate estate pay certain paraphernal claims due her, in order to avoid the effect of confusion and compensation as to one-half thereof, which would result from their recognition *445 as a community debt. The court simply held it to be a community debt, and, having accepted the community, she could not receive the benefits therefrom and repudiate the liabilities. No additional authority is cited in support of this contention. On the other hand, this court has held that the husband, as head and master of the community, is liable for its debts personally. Glasscock, Tutor, v. Green, 4 La. Ann. 146; Succession of Lamm, 40 La. Ann. 312, 4 South. 53; Succession of Brownlee, 44 La. Ann. 917, 11 South. 590; Marr’s Dig. vol. 4, p. 964, § 173.
[5, 6] Prior to the dissolution of the community, no interest is due by the husband upon the separate funds of the wife used by him individually or for the benefit of the community, since the fruits and revenues of her paraphernal estate fall into the community, After the partnership of acquets and gains ends, whether by an action for that purpose, or as the result of a judgment of separation from bed and board, such fruits become the separate property of the wife also, except to the extent that she may be called upon under certain conditions to contribute to the support of the family. The husband, therefore, becomes liable for interest at the legal rate from the date the community is dissolved. Succession of Hasley, 27 La. Ann. 590; Burns v. Thompson, 39 La. Ann. 384, 1 South. 913.
For the reasons assigned, the judgment appealed from is affirmed.