Mrs. Elizabeth Frost WHITED et al.,

v.

UNITED STATES of America.

Civ. A. No. 7023.

United States District Court
W. D. Louisiana,
Shreveport Division.

July 23, 1963.

948

W. Scott Wilkinson, Wilkinson, Lewis, Woods & Carmody, Shreveport, La., for plaintiffs.

Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Myron C. Baum, Stanley F. Krysa, Jerome J. Reso, Jr., Attys., Dept. of Justice, Washington, D. C., Edward L. Shaheen, U. S. Atty., and Edward V. Boagni, Asst. U. S. Atty., Shreveport, La., for the government.

BEN C. DAWKINS, Jr., Chief Judge.

Edwin A. Frost died in Shreveport, Louisiana, on January 16, 1950, leaving his two daughters, Mrs. Elizabeth Frost Whited and Mrs. Mary Frost Willis, as his sole heirs. He also was survived by his widow in community, Mrs. Virginia C. Frost, to whom he had been married since 1892.

A federal estate tax return accompanied by payment of the amount computed to be due was filed by them on April 12, 1951. After an audit of the return, an additional assessment of estate tax upon the Frost estate, in the sum of $386,-871.24, including $55,026.78 in interest, was levied by the Commissioner.

After deducting the credit for additional Louisiana estate taxes allowed by Section 813(b) of the Internal Revenue Code of 1939, the additional amount of the tax levied was paid. After plaintiffs' timely application for a refund was denied and all administrative remedies exhausted, this suit for refund was filed here.

The Government moved to dismiss for lack of jurisdiction alleging that the entire amount of the tax due the federal Government had not been paid as required by the decision of the Supreme Court in Flora v. United States, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1960). This motion was denied on November 25, 1960. The case now is submitted on its merits on an agreed stipulation of facts.

The assessment made by the Commissioner involves essentially the propriety vel non of his allocation of certain properties between the separate and paraphernal estate of Mrs. Virginia Frost and the community property regime of the Frosts. The assessment increased the estate by including property that Mrs. Frost claimed came into her separate estate by three different types of transactions. Included were (1) the fruits and revenues received by Mrs. Frost from donations made to her by her husband prior to August 1, 1942, (2) amounts claimed to have been due her from Mr. Frost on a note and on open account, and (3) certain cash, stocks, and bonds received by Mrs. Frost from the dissolution of a trust in February 1944, which had been established in 1933.

(1) *Fruits and revenues from property donated prior to August 1, 1942.*

■■ The Commissioner included in the decedent's estate the fruits and revenues received by Mrs. Frost from donations made to her by her husband prior to August 1, 1942. Prior to this date, *inter vivos* spousal donations were revocable at the will of the donor under the provisions of Article 1749 of the Louisiana Civil Code of 1870.[1] The estate tax law provides that any property as to which the donor has the right of revoking a donation is includable in the

---

1. Art. 1749 (Prior to its repeal by Acts 1942, No. 187, § 4):

    "All donations made between married persons, during marriage, though termed *inter vivos*, shall always be revocable.

    "The revocation may be made by the wife, without her being authorized to that effect by her husband, or by a court of justice."

gross estate of the decedent.[2] Plaintiffs concede that the property donated to Mrs. Frost is includable in the estate of the decedent,[3] but vigorously contend that "fruits and revenues" derived from the donated properties would not have had to be returned in the event of a revocation. They argue that if the donor could not have forced the return of these fruits and revenues, then these amounts would not be includable in the estate of the decedent.[4] The question of which properties are subject to the power of revocation is a matter of state law. Zirjacks v. Scofield, 197 F.2d 688 (5 Cir., 1952).

An examination of the Louisiana jurisprudence interpreting Louisiana Civil Code Article 1749 (1870) reveals only one case which mentions the question of restoration of fruits and revenues when an *inter vivos* donation between spouses is revoked. In Cousin v. St. Tammany Bank & Trust Company, 146 La. 393, 83 So. 685 (1919), the following language appears at 83 So. 687:

> " * * * Even granting that the donation by the husband to the wife vested the title in her to that property, it was revocable at any time (C. C. art. 1749), and the effect of a revocation is to restore the rights of the donor as completely as if no donation had ever been made (Leverett v. Loeb, 117 La. 310, 41 So. 584); that is, all fruits and revenues, as well as property purchased therewith, again became the donor's property. * * * "

There the husband had donated property to his wife of a value of approximately $2,150. She later disposed of part of these properties and purchased a certain parcel of land for $382.50. Afterward, some improvements were made upon the property with funds furnished largely by the husband from the community of acquets and gains existing between them. The wife, in order that her husband might obtain a loan from the bank, joined him in executing an affidavit stating that she had never owned any separate or paraphernal property. Upon the bank's requirement, she executed a donation *inter vivos* to her husband of this property. She also appeared as a party to the act of mortgage given by her husband to the bank and expressly " * * * renounced all rights and claims of every character which she might have had in the property in question * * * ." Several years later, when a new loan was obtained from the bank, she again joined her husband in executing a new mortgage upon the property " * * * for the purposes above indicated * * * ."

A comparison of the amounts expended by the wife on the property in question with the amount of the husband's original donation clearly showed that the husband's donation far exceeded the amount of the wife's donation. Thus the funds used to acquire the property were or could have been derived from the husband's original donation without the addition of any fruits or revenues since the wife's acquisition of the property. The court in Cousin stated, at 83 So. 688,

> " * * * However, since the property in contest was, as we have found, acquired by the wife with funds arising from the donation to her by her husband, when she later donated a part of it to him (he appearing and formally accepting), and he thereupon placed a mortgage upon it in favor of the bank, the effect was to revoke his original donation to her, at least to the extent of the funds which went to pay for that property, and it took the place, in his hands, of the money so invested."

Hence, the main thrust of the Cousin decision is that a revocation of an interspousal donation is not limited to the

2. Section 811(d) of the 1939 Code, as amended 1948.

3. Stipulation. Keifer's Estate v. C. I. R., 44 B.T.A. 1265 (1941).

4. Section 811(d) of the 1939 Code provides that only the interest of the decedent is to be included.

exact items of the original donation but extends to assets that have changed in form. The Court's statement that "* * all fruits and revenues, as well as property purchased therewith, again became the donor's property * * *" was entirely unnecessary to its decision in light of the other facts it found, was not supported by any language in LSA–Civil Code Article 1749, which is silent on the subject, and did not even mention LSA–Civil Code Article 1569, which appears infra, and which clearly shows the rule to be to the contrary. These Articles are *in pari materia* and must be construed together. LSA–Civil Code Article 17:

"Laws *in pari materia,* or upon the same subject matter, must be construed with a reference to each other; what is clear in one statute may be called in aid to explain what is doubtful in another."

Article 1749 of the Civil Code of 1870 twice has traveled to the Fifth Circuit on estate tax questions, in Howard v. United States, 125 F.2d 986 (C.A.5, 1942), and in Vaccaro v. United States, 149 F.2d 1014 (C.A.5, 1945). In neither of these cases was the matter of whether fruits and revenues would be subject to the power of revocation of Article 1749 involved. In Howard the Court said, at 125 F.2d 990:

"The executors contend in the alternative that * * * the power of revocation exercisable by the donor was effective only as to the particular thing given, and had previously ceased to exist as to all securities that were changed in form. This contention is unsound for the reason that the statutory power of revocation is enforceable so long as the substance of the donation is tangible or is susceptible of identification. That the entire amount assessed was susceptible of identification in 1937 is evidenced conclusively by the recitation in the stipulation of facts that the disputed assets either were acquired by the donee by purchase with cash given to her by her husband, or were acquired by the redemption, sale, or exchange of other securities given by him to her. * * * *"

In Vaccaro, the contention again was raised that the power of revocation conferred by Article 1749 was enforceable only so long as the object of the donation was still in the donee's possession. The Court, citing Howard, supra, and Cousin, supra, held that the issues in Howard involved the same question of identity of assets and ruled against the taxpayers.

Since the issues involved in Vaccaro and Howard did not involve the inclusion of fruits and revenues, the language regarding that subject in Cousin, and its quotation in Vaccaro, cannot be given the effect of authoritative rulings on this point. American Surety Co. v. United States, 239 F. 680 (C.A.5, 1917); Don George, Inc. v. Paramount Pictures, 111 F.Supp. 458 (W.D.La.1951); Miller v. Board of Commissioners of Port of New Orleans, 199 La. 1071, 7 So.2d 355 (1942); Moulin v. Monteleone, 165 La. 169, 115 So. 447 (1928).

Plaintiffs contend that LSA–Civil Code Article 1569 governs the disposition of fruits and revenues where the donation is revoked and rescinded, and we agree with that contention. That Article provides:

"Art. 1569. In *all* cases, in which the donation is revoked or dissolved, the donee is not bound to restore the fruits by him gathered previous to the demand for the revocation or rescission." (Emphasis added.)

This Article, while also appearing in the Louisiana Civil Code of 1825 (Art. 1562), did not appear in the Louisiana Civil Code of 1808, nor did it appear in the Code Napoleon. Research by counsel and our own independent research has not revealed any cases that deal with the applicability of this Article to the revocation of interspousal gifts. Counsel for the Government contend that Article 1569 has no relationship to Article 1749. This contention stems from the format of the Civil Code. Title II of

Book 3 of the Civil Code deals with donations *inter vivos* and *mortis causa.* Under this title the Articles state that *inter vivos* gifts are to be considered irrevocable,[5] but for certain specified exceptions contained in Article 1559. Articles 1559 and 1569 are both contained in Chapter 5 which is entitled "Of Donations Inter Vivos." The Government contends that since Article 1569 appears in this section, the Article only applies to the kinds of *inter vivos* donations mentioned therein. Plaintiffs vigorously oppose this contention, maintaining that Article 1569 extends to every instance in which a donation is revoked except those cases where the Code has provided otherwise.

In civil law jurisdictions, it long has been recognized that a basic source of legal doctrinal material is provided by treatise writers. In recognition of this civilian tradition, the Louisiana Law Institute has translated the Treatise on The Civil Law by Marcel Planiol. In the Foreword to the translated edition, the special significance of the work is pointed out by the fact that 1800 of the articles of the Code Napoleon, the basis of Planiol's Treatise, are contained in full or in part in the Louisiana Revised Civil Code of 1870.[6]

While the Code Napoleon has no article equivalent to Article 1569 of the Louisiana Code of 1870, the French Law does provide for the revocation of interspousal donations since the subject is commented upon by Planiol. In 3 Planiol, § 3223, the effects of the revocation of the interspousal donation were stated:

"The revocation has the same effects as a rescission. Because it retroactively destroys the donee's title, it affects the third parties involved. (Cf. No. 2635 above)."[7]

This section, and the sections dealing with revocation and rescission of dona-tions, fall in Volume 3, Part 2, of Planiol's Treatise which is entitled Donations and Testaments. This is further divided into two sections: "The General Rules" and "Special Types of Gratuities." An examination of the Louisiana Civil Code of 1870 shows that Book 3, Title II, is organized in much the same manner. The general rules concerning donations are first set forth, then are followed by rules concerning special donations.

In several instances, Planiol discusses the effects of a rescission or revocation of a donation. In 3 Planiol, § 2675, where the effect of a rescission of a donation because of the birth of a child is discussed, the donee keeps the fruits of the property as owner until the birth of the subsequent child. 3 Planiol, § 2656, states that fruits and revenues are to be retained by the donee until the instigation of the action of revocation because of ungratefulness of the donee. In 3 Planiol, § 2635, the revocation for non-execution of charges is discussed. The Article states:

"The donee owes the restitution of fruits and revenues only from the day of the donor's action. Those which he has acquired previously, he keeps. The retroactive effect of the revocation is not designated to bring about the restitution of enjoyment in the past years, but to assure that the donor will receive his interest back free from any burdens."

In not one instance does Planiol suggest that the donee must restore the fruits.

Of especial significance, we think, is the language of § 2635, supra, showing that the revocation is not designed to bring about restitution of enjoyment ("fruits and revenues") to the donor, but rather to assure that the donor will receive the corpus. To require restoration

---

5. Article 1468, Book 3, Title II, Chapter 1 of the Civil Code of 1870.

6. 1 Planiol, Foreword 3.

7. Note—"Cf." is used when a factual distinction between the text and the authority is of such legal significance that the proposition of law must be materially different. (From 27:2:4, A Uniform System of Citation, 10th ed.)

of the corpus plus all the fruits could be very onerous to an individual since the fruits might exceed the original donation many times. This is pointed out in 3 Planiol, § 2656, where it is stated:

"* * * If he [the donee] were bound to a full restitution, the accumulation over a period of time could result in an excessive amount. The donee could be ruined and the donor would enrich himself without cause by getting capitalized interest, often long years after the donation was made."

We believe this view is correct, and that the Louisiana Courts would, when presented with the question, adopt this view.

■ The Cousin case, supra, would be no bar even if it were not distinguishable as shown. Louisiana Courts would not be bound by the language quoted supra, since a single case does not afford a basis for application of the doctrine of *stare decisis* in Louisiana. Miami Corporation v. State, 186 La. 784, 173 So. 315 (1937); Quaker Realty Co. v. Labasse, 131 La. 996, 60 So. 661 (1914), and cases cited therein; Dorsey v. Metropolitan Life Insurance Company, 145 So. 304 (La.App.1933); Cf. Vaughan v. Housing Authority of New Orleans, 80 So.2d 561 (La.App.1955). See Jennings & Co. v. Maestri, 22 F.Supp. 980 (E.D.La.1938). In Jennings, the Court quoted with approval language from Quaker Realty Co. v. Labasse, 131 La. 996, 60 So. 661 (1914),

"'A single decision is not necessarily binding.' 11 Cyc. 745. 'More than one decision,' said Judge Martin in Smith v. Smith, 13 La. 441, 'is required to settle the jurisprudence on any given point or question of law.' 'We have often said,' said this court in Lagrange v. Barre, 11 Rob. 302, 'it requires more than one decision to establish a jurisprudence.'"

■ In another tack, the Government assessed additional estate taxes upon the Frost estate, contending that the fruits and revenues derived from the paraphernal property of Mrs. Frost should have been included in the community of acquets and gains from 1944 until Mr. Frost's death in 1950. Article 2386 of the Civil Code (as amended in 1944) provides:

"The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone. The said instrument shall be executed before a Notary Public and two witnesses. and duly recorded in the Conveyance Records of the Parish where the community is domiciled.

"If there is no community of gains, each party enjoys, as he chooses, that which comes to his hand; but the fruits and revenues which are existing at the dissolution of the marriage, belong to the owner of the things which produce them."

Since it has been stipulated that Mrs. Frost had not filed a notarized written instrument as required by Article 2386, as amended in 1944, clearly the fruits and revenues derived from her paraphernal property since the effective date of the amendment to the Article must fall into the community.

Prior to the 1944 amendment, Article 2386 of the Civil Code provided,

"When the paraphernal property is administered by the husband, or by him and the wife indifferently, the fruits of this property, whether natural, civil, or the result of labor, belong to the conjugal partnership, if there exists a community of gains. If there do not, each party enjoys,.

as he chooses, that which comes to his hands; but the fruits and revenues, which are existing at the dissolution of the marriage, belong to the owner of the things which produce them."

It is well settled in Louisiana that prior to the amendment of Article 2386 the fruits of the wife's paraphernal property would belong to the community if the husband "administered" the property. See, e. g., Commissioner of Internal Revenue v. Gray, 159 F.2d 834 (C.A.5, 1947).

A synopsis of the Louisiana law concerning administration of paraphernal property as mentioned in article 2386 prior to the 1944 amendment appears in a case note entitled "Community Property—Administration of Wife's Separate Property," found at page 589 of 7 La. Law Review:

"Judging from the judicial interpretations of the word [administer], the best of which is found in Miller v. Handy, [33 La.Ann. 160] it appears that administration involves the actual control and management of the property. In order for the fruits to remain the separate property of the wife she has to retain the 'sole, separate and exclusive authority' over her property. The minute she permits her husband to take over the control and management, either completely or jointly with her, the fruits cease to be separate and become community property. Therefore, it may be said that administration by the husband depends not so much on what the husband does as what the wife does or, in failing to do, allows her husband to do. The wife has to give her consent either tacitly or expressly. There must also be an intent for the husband to administer the property for his own benefit and that of the community. Without such an intent the administration might amount to no more than that of an agency in which case the fruits would still be separate property. It is not meant to imply, however, that

such consent and intent without an actual administration by the husband would determine the nature of the fruits.

"Property in possession of, and administered by, the husband is presumed to belong to the community. The husband is presumed to exercise administration until the contrary be shown, and the burden of proof is on those who contest it."

Further clarification of what constitutes administration was pronounced by the Louisiana Supreme Court in Paul v. Arnoult, 164 La. 841, 114 So. 706 (1927), and again approved by that Court in Slater v. Culpepper, 233 La. 1071, 99 So.2d 348 at page 357, where the Court said:

"* * * In their application for a rehearing, defendants disputed the correctness of our holding, submitting that the fact that the husband becomes the wife's agent in handling her separate estate does not necessarily warrant the conclusion that he is its administrator. In support of this position, counsel cite the following cases: Miller v. Handy, 33 La.Ann. 160; Stauffer, Macready & Co. v. Morgan, 39 La.Ann. 632, 2 So. 98; In re Leeds & Company, 49 La.Ann. 501, 21 So. 617; Colvin v. Johnston, 104 La. 655, 29 So. 274; Paul v. Arnoult, 164 La. 841, 114 So. 706 and Guss v. Mathews, 179 La. 1033, 155 So. 765.

"These adjudications recognize that it is not incompatible with the wife's personal and sole administration of her paraphernal property to appoint her own husband as her agent for the purpose of that administration. And it is tersely stated in Paul v. Arnoult, in holding, under the particular facts there presented, that the husband was merely acting as agent of his wife and, therefore, her separate property was not under his administration, that:

"'* * * Such a case is presented only when the husband,

with the consent of the wife, uses the separate estate of the wife *for his own benefit* or that of the community. It is not presented when the husband acts merely as the agent of his wife and *for her benefit*. Cf. Miller v. Handy, 33 La.Ann. 160, 164. So that the question is not so much by whom the property was physically managed as *for whose benefit* was it so managed.' [164 La. 841, 114 So. 707.]" (Emphasis by the Court)

The stipulation of facts shows the following information which is pertinent to the administration of Mrs. Frost's paraphernal property. At the time of her husband's death, Mrs Frost had property listed in her name in the amount of $1,308,191.56 (Stip. 12), all of which was acquired during the existence of the community as the result of gifts from her husband and increments from fruits and revenues. (Stip. 13.) Mr. Frost was closely identified with the following corporations in which Mrs. Frost had a substantial interest (quoting from the Stipulation):

" * * * Frost Lumber Industries, Inc., Frost-Whited Investment Company, Louisiana Delta Hardwood Lumber Company, American Compress and Warehouse Company, and Frost Hardwood Floors.

"From time to time, minority stockholders of these various companies approached Mr. Frost informing him that they wished to dispose of their stock. The decedent did not wish to acquire stock in this manner since it might appear to other investors that he, a substantial shareholder, was continually buying out the interests of minority shareholders. In some of these instances, he would instead, recommend that the shares be purchased by Mrs. Frost.

"Mrs. Frost frequently sought and received the advice of her husband and others. After soliciting and receiving this advice, she made the final decision as to whether or not she would make any particular investment. The purchase price of the stocks and bonds which she acquired was paid by her personally out of her own personal bank account. Mrs. Frost also had her own savings accounts and safety deposit box to which she had the only key. Stocks and securities which she purchased were placed and kept by her in her safety deposit box. Mr. Frost did not have access to Mrs. Frost's safety deposit box. He had a separate safety deposit box in his name.

\* \* \* \* \* \*

"Income received by Mrs. Frost and the proceeds from the sale or disposition of assets were deposited in her several bank accounts, both checking and savings, with no bookkeeping entries identifying the source of the deposit."

The stipulation clearly reveals that Mrs. Frost had the "sole, separate and exclusive authority" over all her property except that which she had loaned to her husband. Hence, with the exception of the property in the possession of Mr. Frost, the fruits and revenues which accrued prior to 1944 belong to the separate estate of Mrs. Frost. Any fruits and revenues that have been derived from use of the funds loaned to Mr. Frost are includable in the community. Louisiana Civil Code Art. 2386 (1870) (as amended, 1944).

### (2) *The indebtedness of the decedent to Mrs. Frost.*

Insofar as the monies and other paraphernal property loaned to Mr. Frost by his wife from the fruits and revenues received prior to 1944, Louisiana law gives the wife an absolute right to recover this amount from the community funds. In Slater v. Culpepper, 233 La. 1071, 99 So.2d 348, 349 (1957) at 360, the Louisiana Supreme Court said,

" * * * Under our law the wife, unlike the husband, has the absolute right to restitution for her paraphernal effects and their fruits, ei-

ther delivered to her husband or delivered for use to the community, save in instances governed by Article 2389 of the Civil Code, which is not applicable here. In the case of the husband, it is incumbent upon him to establish that his separate property has been employed to enhance the community at its dissolution. [Omitting citations.] But, in the case of the wife, the right to restitution is unqualified, Article 2391 of the Civil Code providing:

> " 'The wife has, even during marriage, a right of action against her husband for the restitution of her paraphernal effects and their fruits, as above expressed.'

"See also Rowley v. Rowley, 19 La. 557; Le Blanc v. Le Blanc, 20 La. Ann. 206; De Lesdernier v. De Lesdernier, 45 La.Ann. 1364, 14 So. 191; Succession of Meteye, 113 La. 1012, 37 So. 909; Jones v. Jones, 130 La. 438, 58 So. 140; Succession of McCloskey, 144 La. 438, 80 So. 650; Succession of McMahon, 176 La. 63, 145 So. 269 and Succession of Schnitter, 220 La. 323, 56 So.2d 563."

This does not, however, end the inquiry as to whether these amounts are includable in the gross estate of Mr. Frost. As determined above, the original properties donated before 1942 carried a legal right of revocation because of the provisions of Louisiana Civil Code Article 1749 (1870), but the wife could retain the fruits and revenues even if the donation were revoked. Hence, one-half of any monies or properties which were subject to Mr. Frost's power of revocation would be includable in his estate. Those advances made to him before 1944 from fruits and revenues of the donated properties would not be subject to the power of revocation and not includable in his estate.

In examining the auditor's explanation of changes in the gross estate, we find that the reason given for inclusion of the note and open account of E. A. Frost in his estate was that it was revocable under Article 1749 of the Civil Code before the 1942 amendment. The Government's contention that plaintiffs are precluded from raising this issue here, because it was not contained in their claim for refund,[3] does not appear well founded. At page ten of the claim for refund, the plaintiffs specifically ask that all additions by the Commissioner contained in Schedule 1–A of the Revenue Agent's report be refunded. This included amounts due Mrs. Frost by her husband. In their claim for refund, plaintiffs have fairly stated that these items should not have been included because they were the separate property of Mrs. Frost. As stated, those amounts which represented fruits and revenues which accrued prior to 1944 should not be included in the gross estate.

### (3) The Trust Estate

On December 23, 1933, Mr. Frost created a trust pursuant to Louisiana Act 107 of 1920 for the benefit of Mrs. Frost, their daughters and others. The trust instrument specifically provided that it should be irrevocable and that at the end of the ten year term of the trust, the corpus should be distributed in equal shares among the beneficiaries. Plaintiffs advance two arguments that the property given in trust was not subject to a power of revocation under Civil Code Article 1749.

Their first contention is that the enactment of the trust law superseded all Louisiana laws that conflicted with common law trust concepts. One of the basic concepts of common law trusts is that they are irrevocable unless the power to revoke is specially reserved in the instrument creating the trust. See 89 C.J.S. "Trusts" § 88. Plaintiffs, therefore, con-

---

**8.** See Section 3772(a) of the Internal Revenue Code of 1939. See, also, Real Estate-Land Title & Trust Co. v. United States, 309 U.S. 13, 60 S.Ct. 371, 84 L. Ed. 542 (1940); Alabama By-Products Corp. v. Patterson, 258 F.2d 892 (C.A. 5., 1958).

**956**

clude that Civil Code Article 1749 has been repealed when considered in relation to the Trust Act.

Section 8 of the Act, 107 of 1920, read:

"That the provisions contained in the Revised Civil Code and the laws of this state relative to substitutions, *Fidei Commissa,* or trust dispositions, and the legitime shall not be deemed to apply to, or in any manner affect donations of the character and made in the manner provided by this Act; and all laws or parts of laws conflicting with the provisions of this Act are repealed insofar as regards the purposes of this act, *but not otherwise."* (Emphasis added.)

Certainly many Louisiana Statutes and Code Articles affect the right of a person to make a gift whether in trust or otherwise. The common law does not differ in this rule. See Commissioner of Internal Revenue v. Allen, 108 F.2d 961 (C.A.3, 1939). Hence, the fact that the trust was used as a vehicle to donate property cannot abrogate the rule that an *inter vivos* gift between spouses prior to 1942 was always revocable. La. Civil Code Article 1749 (1870).

Additionally, plaintiffs urge that the gifts were not complete until 1944, two years after the repeal of Louisiana Civil Code Article 1749. The gift to Mrs. Frost, however, was complete in 1933 upon the execution of the trust instrument. The instrument provided that she was to receive her portion of the corpus at the expiration of the ten-year term of the trust. The gift to Mrs. Frost consisted of this and not the actual stocks and bonds themselves, plus her right to her portion of the trust income during its existence.

In determining the amount to be included in the Frost estate, the valuation of these items given in trust must be measured by the value of the gift at the time it was made. To do this, the present value of Mrs. Frost's share of the corpus in 1944 and her right to income under the trust must be determined as of the time of the gift. Since the gift was complete in 1933, any increase must be attributable to fruits and revenues, which, as determined above, are not includable in the gross estate.

A suitable decree should be presented.