**AMERICAN MANNEX CORPORATION, Plaintiff,**

v.

**Abel P. PREJEAN, Sheriff and Ex-Officio Tax Collector, Parish of Terrebonne, and His Successors in Office, Defendant.**

**AMERICAN MANNEX CORPORATION, Plaintiff,**

v.

**Charlton P. ROZANDS, Sheriff and Ex-Officio Tax Collector, Parish of Terrebonne, Louisiana, et al., Defendants.**

**Civ. A. Nos. 68-1150, 70-807.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

June 7, 1971.

H. Paul Simon, John A. Stassi, II, New Orleans, La., for plaintiff.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, 2nd Asst. Atty. Gen., Henry J. Roberts, Jr., Asst. Atty. Gen., Thomas M. Brahney, III, Sp. Counsel, L. K. Clement, Jr., Harry H. Howard, Asst. Attys. Gen., for defendants.

RUBIN, District Judge:

In a suit involving 1966 ad valorem property taxes on imported oil well casing shipped from Canada to Louisiana and stored there awaiting sale, the Louisiana Supreme Court held that the Import-Export Clause of the Constitution [1] did not prevent the imposition of the tax because it considered that, once any part of the original shipment had been sold, all imported merchandise remaining in a warehouse was subject to state taxation. The same taxpayer then filed suit in federal court contesting the constitutionality of the tax as applied in 1967, 1968, 1969. After denying a motion for summary judgment, and after hearing the case on its merits, this court expressed a view of the breadth of the shield afforded by the Import-Export Clause different from that taken by Louisiana's Supreme Court. It stated, that, so long as the

imported goods remain in the warehouse in their original form, their protection against local tax does not end merely by the sale of a part of the original shipment; and it applied that interpretation in this suit.

In its motion for reconsideration the state does not attack this court's interpretation of the Constitution. But it argues again, as it did at the outset of this suit by motion for summary judgment, that the prior decision is res judicata or at least that it constitutes a collateral estoppel against further litigation.

There is no issue concerning the effect of an adjudication of fact in a prior judicial determination: the facts in both suits were stipulated, and the only issue for ultimate determination is a legal question, the applicability of the Import-Export Clause. There is but one alleged factual difference between the cases. In the prior suit, it was not shown whether all or any of the imported tubular steel oil-well casing was subsequently sold and shipped to customers in other states than Louisiana. Here the stipulation indicates that, of the imported casing stored in public warehouses in Concordia, Terrebonne Parish, St. Mary and Jefferson Parishes, and taxed by the state, 25.3% was shipped to points outside Louisiana in 1967; 21.6% was thus shipped in 1968; and 41.8% went to other states in 1969.

The court that heard the 1966 case was entitled to assume on the facts before it that all of the taxed casing was ultimately destined for, and ended its international travel, in Louisiana. But the court's opinion does not express such an assumption. So it is impossible to state whether, with respect to the years now under consideration, the fact that a substantial part of the imported steel pipe did not end its travel in Louisiana makes this case factually different from the earlier one. Even if this factual difference did exist, however, it should not be decisive of a different result. With

1. U.S.Const. Art. I, § 10, cl. 2.

all the facts now in the record, the question therefore remains: does the earlier decision preclude further judicial consideration of the issue?

## I. RES JUDICATA

■■ The effect of the prior decision as res judicata ought to be determined by the rules of the court that rendered it. James Talcott, Inc. v. Allahabad Bank, Ltd., 5 Cir. 1971, 444 F.2d 451; Restatement (Second), Conflict of Laws, Proposed Official Draft, § 95 (1967). Under a principle of Louisiana law applied in 1906, the determination of the validity of an ad valorem property tax for one year does not have the authority of the thing adjudged when the same taxpayer contests a levy for a subsequent year. Hubert v. City of New Orleans, 116 La. 507, 40 So. 853 (1906). See, also, Mississippi River Fuel Corp. v. Cocreham, 5 Cir. 1967, 382 F.2d 929, 937 n. 16, cert. denied Moulton v. Mississippi River Fuel Corp., 390 U.S. 1014, 88 S.Ct. 1264, 20 L.Ed.2d 164 (1968).

Nor is this a random decision. For it follows fundamental principles of res judicata long settled in Louisiana. Article 2286 of the Louisiana Civil Code provides:

"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."

■ The scope of res judicata thus commanded is narrower than the preclusion given by the prior judgment at common law. Durmeyer v. Streiffer, 1949, 215 La. 585, 41 So.2d 226; Hope v. Madison, 1940, 194 La. 337, 193 So. 666; Quarles v. Lewis, 1954, 226 La. 76, 75 So.2d 14; see also Lloveras v. Reichert,

1941, 197 La. 49, 200 So. 817. Comment, 2 Louisiana Law Review 491, 492 (1940). The plea is stricti juris, and any doubt as to the identity of the causes of action in the two suits must be resolved against the party who claims that the case has already been determined. Bullis v. Town of Jackson, 1943, 203 La. 289, 14 So.2d 1.

The judgment in the prior suit determined only that the taxpayer was not entitled to an injunction against the collection of 1966 ad valorem property taxes. It did not, indeed it could not, determine American Mannex' liability for 1967 taxes or 1968 taxes, or taxes for later years as yet unpaid when the prior suit was commenced even if the facts on which that liability was to be determined remained unchanged.

None of the decisions cited by the state challenges this principle. It is manifest on reviewing them that they involve attempts to secure a different judicial result by relitigating the same cause of action on the same facts once previously determined.[2]

■ To the extent that Louisiana courts have gone beyond the civilian rule set forth in Article 2286, they have permitted the earlier determination to foreclose later litigation only with respect to matters that "might have been pleaded," but actually were not asserted, in the prior suit.[3] Here there is no contention that the facts in 1966 were the same as they were in 1967 or 1968 or 1969. But even if the facts were no different, the *cause of action* in the two suits was different. Hence under the widest scope of res judicata recognized in Louisiana the issue in these suits is not determined by the prior litigation.

## II. COLLATERAL ESTOPPEL

■ Until 1957, Louisiana courts had consistently held that the common law estoppel doctrine did not supplement the

2. See, e. g. Rankin v. State of Florida, 5 Cir. 1969, 418 F.2d 482; Grubb v. Public Utilities Commission, 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972 (1930).

3. See, e. g. Quinette v. Delhommer, La. App., 165 So.2d 900 (1964).

state's narrow rule of res judicata. See Quarles v. Lewis, 226 La. 76, 75 So.2d 14 (1954). In California Company v. Price, 234 La. 338, 99 So.2d 743 (1957), however, the Louisiana Supreme Court distinguished *Quarles* and held, "[E]ven if res judicata cannot be strictly applied the parties * * * are bound by judicial estoppel which extends to every material allegation or statement made on one side in the prior Price case and denied on the other which was determined in the course of the proceedings." Id. at 747. The *Price* holding has been severely criticized by Louisiana's leading commentator on Civil Procedure. See McMahon, The Work of the Louisiana Supreme Court for the 1957–58 Term, 19 La.L.Rev. 294, 390 (1959). At least two Louisiana Appellate Courts have distinguished *Price* and rejected the existence of the collateral estoppel doctrine. Shell Oil Co. v. Texas Gas Transmission Corp., La.App.1964, 176 So.2d 692; Rouseo v. Atlas Finance Co., La.App.1964, 167 So.2d 495. However, the *Price* case is too recent [4] and its holding has been accepted by too many Louisiana Appellate Courts [5] for this Court to doubt its continued validity. If, as in a diversity case, the Federal District Court is to determine what the Louisiana Supreme "[C]ourt would do if faced with the question *at this time*," [6] I must conclude that it would find that a doctrine of judicial estoppel that is broader than "res judicata strictly applied" exists as a supplement to res judicata.

■ It is unnecessary at this time to determine whether Louisiana's judicial estoppel doctrine is a complete analogue to the common law collateral estoppel doctrine. The facts in *Price* are sufficiently parallel to those in *Mannex* that the "judicial estoppel" doctrine there recognized, however narrow it may be, clearly applies. In *Price* two rival claimants disputed the ownership of certain oil royal-

ties. In the earlier suit different oil royalties for production from the same tract had been disputed by the same parties. In both suits the validity of a land patent given by one claimant to the other was the legal issue contested. As in *Mannex*, identical parties or their privies utilized identical legal arguments to dispute their rights to funds that had accumulated in different years. Thus the judicial estoppel doctrine announced in *Price* forecloses Mannex' suit here.

Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948) does not compel a contrary result. In *Sunnen,* the Court held that in tax cases the estoppel doctrine would be given only a narrow scope in order to prevent an earlier decision from creating an "undue disparity" in the application of the tax law to different taxpayers. Successive tax suits would not be governed by collateral estoppel if there was "a subsequent modification of the significant facts or a change or development in the controlling legal principles * * * [Collateral estoppel] is designed to prevent repetitious law suits over matters which have once been decided and which have remained substantially static, factually and legally." Id. 68 S.Ct. at 720. The Court implied an even more narrow estoppel doctrine when it said that "if the relevant facts in the two cases are separable *even though they be similar or identical,* collateral estoppel does not govern the legal issues which recur in the second case." Id. at 721. (Emphasis added.) The evident tension in the two statements seems to have been resolved in favor of the former; only where the controlling facts or governing law has changed does the Court re-examine the issue. See Stanback v. Commissioner of Internal Revenue, 4 Cir. 1959, 271 F.2d 514; Alexander v. Commissioner of Internal Revenue, 5 Cir. 1955, 224 F.2d 788; Lynch v. Commissioner of Internal

4. Compare, Moore, Federal Practice, ¶ 3.09 [1].

5. Lege v. U. S. Fidelity and Guaranty Co., La.App.1966, 186 So.2d 670; Coates Equipment and Service, Inc. v. Glover,

La.App.1965, 181 So.2d 455; Giroir v. Dumesnil, La.App.1965, 172 So.2d 89, 94.

6. Moore, Federal Practice, ¶ 3.09 [1] (emphasis in original).

944

Revenue, 7 Cir. 1954, 216 F.2d 574. Where the facts are identical, though the tax years are different, successive litigation of the same issue is not permitted. A contrary result, permitting the relitigation of identical facts arising under identical legal principles ever year that a tax was levied would ill serve the policy of avoiding redundant litigation, affirmed in *Sunnen*. 68 S.Ct. at 720.

Here Mannex suggests no change in the *significant* facts. The existence of the original form or package and the constitutionality of the tax do not turn on the ultimate destination of the casing. Moreover, Mannex points to no "development in the controlling legal principles." Though my view of the Import-Export Clause may differ from that of the Louisiana Supreme Court, Mannex has had its day in court. Unable to demonstrate any change in the law or facts, it may not have another.

This result is reinforced by policy considerations. In *Sunnen* the Court said that, where collateral estoppel was inapplicable because of a change in the facts, stare decisis might preclude relitigation where "consistency in decision is considered just and desirable." 68 S.Ct. at 721. The Court of Claims has concluded that, where the parties, the law and the controlling facts remain the same, but the facts are separable in the two causes of action, stare decisis should apply. Powers v. United States, 1970, 424 F.2d 593, 191 Ct.Cl. 762. Louisiana rejects the doctrine of stare decisis. See Miami Corp. v. State, 186 La. 784, 173 So. 315 (1937); Whited v. United States, W.D. La.1963, 219 F.Supp. 947; Johnson v. St. Paul Mercury Insurance Co., 256 La. 289, 236 So.2d 216 (1970). Compare Geny, Method of Interpretation and Sources of Private Positive Law, 2d ed. Mayda Translation, § 146. But its courts have frequently expressed a policy against the wastefulness and potential injustice latent in permitting repeated relitigation of the same issues. See Quinette v. Delhommer, La.App., 165 So.2d 900 (1904), aff'd in part and rev'd in part, 247 La. 1121, 176 So.2d 399. Here

Mannex has presented the same set of legal arguments on the same set of facts to the Louisiana Supreme Court. While courts exist not only to settle matters, but to settle them right, there is, and should be, an end to the time when litigants can search for different judicial views of what result is right. Given the recency of the submission of the issue to the Louisiana Supreme Court, and the virtual identity of litigants and issues, sound policy dictates that Mannex should not be allowed to relitigate at this time.

For the above reasons the state's motion for reconsideration is granted and the plaintiff's claim for reimbursement of its 1967–1969 state property taxes is denied.